JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Hospitality Insurance Company

**DEFENDANTS**

Carleys Neighborhood Bar and Grill, LLC
Taray Wilkerson
Esau Lashow Scott

**(b)** County of Residence of First Listed Plaintiff   Worcester County, MA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Franklin County, PA
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Nicholas A. Cummins
1601 Market Street, 16th Floor, Philadelphia, PA 19103
(215) 561-6661

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

❏ 1  U.S. Government
Plaintiff

❏ 3  Federal Question
*(U.S. Government Not a Party)*

❏ 2  U.S. Government
Defendant

☒ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❏ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ❏ 4 | ❏ 4 |
| Citizen of Another State | ❏ 2 | ☒ 2 | Incorporated *and* Principal Place of Business In Another State | ☒ 5 | ❏ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❏ 625 Drug Related Seizure of Property 21 USC 881 | ❏ 422 Appeal 28 USC 158 | ❏ 375 False Claims Act |
| ❏ 120 Marine | ❏ 310 Airplane | ❏ 365 Personal Injury - | ❏ 690 Other | ❏ 423 Withdrawal 28 USC 157 | ❏ 376 Qui Tam (31 USC 3729(a)) |
| ❏ 130 Miller Act | ❏ 315 Airplane Product Liability | Product Liability | | | ❏ 400 State Reapportionment |
| ❏ 140 Negotiable Instrument | ❏ 320 Assault, Libel & | ❏ 367 Health Care/ Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ❏ 410 Antitrust |
| ❏ 150 Recovery of Overpayment & Enforcement of Judgment | Slander | Product Liability | | ❏ 820 Copyrights | ❏ 430 Banks and Banking |
| ❏ 151 Medicare Act | ❏ 330 Federal Employers' Liability | ❏ 368 Asbestos Personal Injury Product | | ❏ 830 Patent | ❏ 450 Commerce |
| ❏ 152 Recovery of Defaulted Student Loans | ❏ 340 Marine | Liability | | ❏ 835 Patent - Abbreviated New Drug Application | ❏ 460 Deportation |
| (Excludes Veterans) | ❏ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ❏ 840 Trademark | ❏ 470 Racketeer Influenced and Corrupt Organizations |
| ❏ 153 Recovery of Overpayment of Veteran's Benefits | ❏ 350 Motor Vehicle | ❏ 370 Other Fraud | ❏ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ❏ 480 Consumer Credit |
| ❏ 160 Stockholders' Suits | ❏ 355 Motor Vehicle Product Liability | ❏ 371 Truth in Lending | ❏ 720 Labor/Management Relations | ❏ 861 HIA (1395ff) | ❏ 490 Cable/Sat TV |
| ❏ 190 Other Contract | ❏ 360 Other Personal Injury | ❏ 380 Other Personal Property Damage | ❏ 740 Railway Labor Act | ❏ 862 Black Lung (923) | ❏ 850 Securities/Commodities/ Exchange |
| ❏ 195 Contract Product Liability | ❏ 362 Personal Injury - Medical Malpractice | ❏ 385 Property Damage Product Liability | ❏ 751 Family and Medical Leave Act | ❏ 863 DIWC/DIWW (405(g)) | ❏ 890 Other Statutory Actions |
| ❏ 196 Franchise | | | | ❏ 864 SSID Title XVI | ❏ 891 Agricultural Acts |
| | | | | ❏ 865 RSI (405(g)) | ❏ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❏ 790 Other Labor Litigation | | ❏ 895 Freedom of Information Act |
| ❏ 210 Land Condemnation | ❏ 440 Other Civil Rights | **Habeas Corpus:** | ❏ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ❏ 896 Arbitration |
| ❏ 220 Foreclosure | ❏ 441 Voting | ❏ 463 Alien Detainee | | ❏ 870 Taxes (U.S. Plaintiff or Defendant) | ❏ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ❏ 230 Rent Lease & Ejectment | ❏ 442 Employment | ❏ 510 Motions to Vacate Sentence | | ❏ 871 IRS—Third Party 26 USC 7609 | |
| ❏ 240 Torts to Land | ❏ 443 Housing/ Accommodations | ❏ 530 General | | | ❏ 950 Constitutionality of State Statutes |
| ❏ 245 Tort Product Liability | ❏ 445 Amer. w/Disabilities - Employment | ❏ 535 Death Penalty | **IMMIGRATION** | | |
| ❏ 290 All Other Real Property | ❏ 446 Amer. w/Disabilities - Other | **Other:** | ❏ 462 Naturalization Application | | |
| | ❏ 448 Education | ❏ 540 Mandamus & Other | ❏ 465 Other Immigration Actions | | |
| | | ❏ 550 Civil Rights | | | |
| | | ❏ 555 Prison Condition | | | |
| | | ❏ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original
Proceeding

❏ 2 Removed from
State Court

❏ 3 Remanded from
Appellate Court

❏ 4 Reinstated or
Reopened

❏ 5 Transferred from
Another District
*(specify)*

❏ 6 Multidistrict
Litigation -
Transfer

❏ 8 Multidistrict
Litigation -
Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. 2201 (Declaratory Judgment); 28 U.S.C. 1332 (Diversity)
Brief description of cause:
Declaration of no duty to defend or indemnify

## VII. REQUESTED IN COMPLAINT:

❏ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

DEMAND $
Declaratory Relief

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ❏ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE Hon. Shawn D. Meyers

DOCKET NUMBER Franklin Co. CCP 2017-4092

DATE
05/24/2018

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____ AMOUNT_____ APPLYING IFP_____ JUDGE_____ MAG. JUDGE_____

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HOSPITALITY INSURANCE COMPANY<br>106 Southville Road<br>Southborough, MA 01772 | : <br> : <br> : <br> : <br> : |
| v. | : NO.<br> : |
| CARLEY'S NEIGHBORHOOD BAR AND GRILL, LLC d/b/a DARA AND JACK'S PLACE, and d/b/a JACK'S PLACE<br>464 Hollywell Avenue<br>Chambersburg, PA 17201 | : <br> : <br> : <br> : **JURY TRIAL DEMANDED**<br> : <br> : |
| and | : <br> : |
| TARAY WILKERSON<br>714 Lincoln Way East<br>Chambersburg, PA 17201 | : <br> : <br> : <br> : |
| and | : <br> : |
| ESAU LASHOW SCOTT<br>808 North 32nd Street<br>Fort Pierce, FL 34947 | : <br> : <br> : |

## <u>COMPLAINT FOR DECLARATORY JUDGMENT</u>

Plaintiff, Hospitality Insurance Company, ("HIC"), by and through its undersigned counsel hereby requests that this Honorable Court grant it declaratory relief as follows:

## INTRODUCTION AND JURISDICTION

1.      This is an action seeking a declaratory judgment pursuant to 28 U.S.C. § 2201 *et seq.* to determine whether HIC is obligated to defend and/or indemnify Carley's Neighborhood Bar and Grill, LLC, d/b/a Dara and Jack's Place and d/b/a Jack's Place, against an underlying lawsuit pending in the Court of Common Pleas of Franklin County at docket number 2017-4092, and captioned, <u>Taray Wilkerson v. Carley's Neighborhood Bar and Grill, LLC, et al.</u> ("the Wilkerson Action").  <u>See</u> Exhibit A, Complaint filed in the Wilkerson Action.

2.      HIC is currently providing a defense to Carley's Neighborhood Bar and Grill, LLC, Dara and Jack's Place, and Jack's Place ("the Insureds") under HIC's Policy No. 37004410GL in effect from December 31, 2014 through December 31, 2015 ("the HIC Policy").  <u>See</u> Exhibit B, HIC Policy (premiums redacted).

3.      HIC is a corporation incorporated under the laws of the Commonwealth of Massachusetts, with a principal place of business located at 106 Southville Road, Southborough, MA 01772.

4.      Carley's Neighborhood Bar and Grill, LLC is a Pennsylvania Limited Liability Company whose sole member, upon information and belief, is Dara Taylor, who is a resident and citizen of the Commonwealth of Pennsylvania.

5.      Carley's Neighborhood Bar and Grill, LLC, upon information and belief, has no members who are citizens of the Commonwealth of Massachusetts or

who are individuals lawfully admitted to the United States domiciled in the Commonwealth of Massachusetts.

6.     It is averred, upon information and belief, that Carley's Neighborhood Bar and Grill, LLC does business as Dara and Jack's Place and Jack's Place.

7.     Taray Wilkerson is an adult individual and citizen of the Commonwealth of Pennsylvania who resides at 714 Lincoln Way, Chambersburg, PA 17201.

8.     Esau Lashow Scott is an adult individual and citizen of the State of Florida who resides at 808 North 32nd Street, Fort Pierce, Florida 34947.

9.     The amount in controversy exceeds $75,000.00 in that the Wilkerson Action seeks damages in excess of $50,000.00 for alleged orbital fractures; laceration to the left eye; injuries to the head, face and eyes; vision impairment; scarring to the face and head; and neurological and emotional injuries to Taray Wilkerson; and, the HIC policy in question has an "each occurrence" limit of $1,000,000.00.  Thus, this court has jurisdiction pursuant to 28 U.S.C. § 1332(a).

## THE WILKERSON ACTION

10.     On October 25, 2017, Taray Wilkerson filed a complaint in the Wilkerson Action naming as defendants Dara and Jack's Place, Carley's Neighborhood Bar and Grill, LLC, Jack's Place, and Esau Lashow Scott.  See Exhibit A.

11.     The Wilkerson Complaint alleges that Dara and Jack's Place, Carley's Neighborhood Bar and Grill, LLC, and Jack's Place (collectively, "the Bar Defendants") owned, operated, possessed or controlled a bar/tavern located at 464 Hollywell Avenue, Chambersburg, PA 17201.  See Exhibit A at ¶¶ 2, 5, 8.

12.     The Wilkerson Complaint alleges alternatively that at the time of the incident in question, Esau Lashow Scott was a customer or an employee of the bar. See Exhibit A at ¶ 11.

13.     The Wilkerson Complaint alleges that on November 6, 2015 at 1:30 AM, employees of the Bar Defendants "instigated a fight" in which Esau Lashow Scott participated, resulting in injury to Taray Wilkerson.  See Exhibit A at ¶¶ 30-32.

14.     In particular, the Wilkerson Complaint alleges that Taray Wilkerson was injured when she was "struck with a pool and/or billiards ball on or about various parts of her body," and was also "struck" "with great force and violence" and "knocked … to the ground."  See Exhibit A at ¶¶ 19.

15.     The Wilkerson Complaint alleges that Esau Lashow Scott is liable for the injury to Ms. Wilkerson by, *inter alia*, "striking, assaulting and battering [Taray Wilkerson] while she was at the tavern," and "striking [Taray Wilkerson] in the face with a pool and billiards ball."  See Exhibit A at ¶¶ 69(m, p).

16.     The Wilkerson Complaint alleges in Counts I, II and III that each of the

Bar Defendants was negligent in, *inter alia*, failing to employ proper staff, failing to monitor the alcohol intake of their guests, failing to train their employees in the handling of emergency situations, failing to remove rowdy patrons from the premises, negligently serving alcohol to intoxicated patrons, and violating the Liquor Code.  See Exhibit A at ¶¶ 36, 47, 58.

17.    The Wilkerson Complaint alleges in Count IV that Esau Lashow Scott was negligent in, *inter alia*, causing a fight, drinking intoxicating liquors in a careless manner, "striking, assault and battering" Taray Wilkerson, and striking Taray Wilkerson in the face with the billiards ball.  See Exhibit A at ¶ 69.

18.    Count V of the Wilkerson Complaint alleges Assault and Battery against all of the defendants, and Count VI of the Wilkerson Complaint alleges Conspiracy against all of the defendants.  See Exhibit A at ¶¶ 79-87.

19.    The Wilkerson Complaint seeks damages in excess of $50,000.00 for alleged injuries to Taray Wilkerson in the form of orbital fractures; laceration to the left eye; injuries to the head, face and eyes; vision impairment; scarring to the face and head; and neurological and emotional injuries.

20.    Upon information and belief, on June 29, 2016, Esau Lashow Scott was found guilty of Simple Assault, 18 Pa. Cons. Stat. Ann. § 2701(a)(1), for "attempt[ing] to cause or intentionally, knowingly or recklessly caus[ing] bodily injury to another," and Disorderly Conduct, 18 Pa. Cons. Stat. Ann. § 5503(A)(1),

for "engaging in fighting or threatening, or in violent or tumultuous behavior," in connection with the incident described in the Wilkerson Complaint.  <u>See</u> Exhibit C, Criminal Dockets.

21.    As a result of the criminal convictions, upon information and belief, Esau Lashow Scott was sentenced to, *inter alia*, two terms of six to twelve months confinement to be served consecutively.  <u>See</u> Exhibit C, Criminal Dockets.

## **<u>THE HIC POLICY</u>**

22.    The HIC Policy is issued to the named insured, Carley's Neighborhood Bar & Grill LLC d/b/a Jack and Dara's.  <u>See</u> Exhibit B at Declarations.

23.    Under "COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY" the HIC Policy contains the following insuring agreement:

**1. Insuring Agreement**

    **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

**. . . .**

    **b.**    This insurance applies to "bodily injury" and "property damage" only if:

        **(1)**    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        **(2)**    The "bodily injury" or "property damage" occurs

during the policy period; and

**(3)**   Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period. **c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

<u>See</u> Exhibit B at Form CG 00 01 12 07, p. 1 of 16.

24.    The HIC Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  <u>See</u> Exhibit B at Form CG 00 01 12 07, p. 14 of 16.

25.    The HIC Policy contains an exclusion for "Expected or Intended Injury," which recites that "This insurance does not apply to:"

**a.    Expected or Intended Injury**
"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or

property.

See Exhibit B at Form CG 00 01 12 07, ¶ 2(a), p. 2 of 16.

26.   As modified by "THE AMENDMENT OF LIQUOR LIABILITY EXCLUSION" endorsement, the HIC Policy contains an exclusion for "Liquor Liability," reciting that "This insurance does not apply to:"

**a.** "Bodily injury" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;
(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or
(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

See Exhibit B at Endorsement Form CG 002 05 12.

27.   As modified by the "Assault and Battery Exclusion Endorsement," the HIC Policy contains an exclusion for "Assault and/or Battery," reciting:

**ASSAULT AND/OR BATTERY EXCLUSION**

The coverage under this policy does not apply to any claim, suit, cost or expense arising out of assault and/or battery, or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of any Insured or Insured's employees, patron, or any other person.   Nor does this insurance apply with respect to any charges or allegations of negligent hiring, training, placement or supervision.   Furthermore, assault and/or battery includes "bodily injury" resulting from the use of reasonable force to protect persons or property.   "This exclusion does not apply to

"bodily injury" resulting from the use of reasonable force to protect persons of property."

<u>See</u> Exhibit B at Endorsement Form CG-NH-200 11/11.

28.     As modified by the "EXCLUSION – AHTLETIC OR SPORTS PARTICIPANTS" endorsement, the HIC Policy contains an exclusion for "Athletic or Sports Participants," reciting:

**EXCLUSION – ATHLETIC OR SPORTS PARTICIPANTS**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILTY COVERAGE PART.

\* \* \*

With respect to any operations shown in the Schedule, this insurance does not apply to "bodily injury" to any person while practicing for or participating in any sports or athletic contest or exhibition that you sponsor.

<u>See</u> Exhibit B at Endorsement Form CG 21 01 11 85.

29.     HIC assumed the defense of Carly's Neighborhood Bar and Grill, LLC, Dara and Jack's Place, and Jack's Place against the Wilkerson Action subject to a reservation of rights.

**<u>COUNT I</u>**
**DECLARATORY JUDGMENT**
**ASSAULT AND/OR BATTERY EXCLUSION**

30.     HIC incorporates by reference paragraphs 1 through 29 of this complaint as if fully set forth here at length.

31.    Under Pennsylvania law, an insurer's duty to defend an insured is determined by the allegations of the complaint in question.

32.    The allegations of the Wilkerson Complaint constitute a suit "arising out of assault and/or battery," including "act[s] or omission[s] in connection with the prevention or suppression of such acts," and further seeks to recover based on "allegations of negligent hiring, training, placement or supervision," within the meaning of the Assault and/or Battery Exclusion to the HIC Policy, such that HIC is entitled to a declaration that it has no obligation under the HIC Policy to defend or indemnify Carly's Neighborhood Bar and Grill, LLC, Dara and Jack's Place, and Jack's Place against the Wilkerson Action.

33.    In the event that HIC owes a duty to defend the Insureds, it is averred that the Wilkerson Action seeks to recover for bodily injury falling within the scope of the Assault and/or Battery Exclusion to the HIC Policy, such that HIC is entitled to a declaration that it has no obligation under the HIC Policy to indemnify Carly's Neighborhood Bar and Grill, LLC, Dara and Jack's Place, and Jack's Place against any settlement or judgment that may be entered in the Wilkerson Action.

WHEREFORE, plaintiff, Hospitality Insurance Company, requests that judgment be entered in its favor, and that the Court enter an order declaring that Hospitality Insurance Company is not required to defend or indemnify Carly's Neighborhood Bar and Grill, LLC, Dara and Jack's Place, and Jack's Place against

the Wilkerson Action.

## COUNT II
## DECLARATORY JUDGMENT
## EXPECTED OR INTENDED INJURY AND LACK OF
## OCCURRENCE

34.    HIC incorporates by reference paragraphs 1 through 33 of this complaint as if fully set forth here at length.

35.    The Wilkerson Complaint alleges that all defendants, including the Insureds, engaged in the intentional tort of Assault and Battery.

36.    If it is determined that the bodily injuries alleged in the Wilkerson Action were expected or intended from the standpoint of the Insureds, the Expected or Intended Injury exclusion to the HIC Policy applies, such that HIC is entitled to a declaration that it has no obligation under the HIC Policy to indemnify Carly's Neighborhood Bar and Grill, LLC, Dara and Jack's Place, and Jack's Place against any settlement or judgment that may be entered in the Wilkerson Action.

37.    Additionally, if it is determined that the Insureds engaged in Assault or Battery or that the bodily injury was otherwise intended by the Insureds, the bodily injury alleged was not caused by an "occurrence" within the meaning of the insuring agreement to the HIC policy, such that HIC is entitled to a declaration that it has no obligation under the HIC Policy to indemnify Carly's Neighborhood Bar and Grill, LLC, Dara and Jack's Place, and Jack's Place against any settlement or judgment that may be entered in the Wilkerson Action.

WHEREFORE, plaintiff, Hospitality Insurance Company, requests that judgment be entered in its favor, and that the Court enter an order declaring that Hospitality Insurance Company is not required to indemnify Carly's Neighborhood Bar and Grill, LLC, Dara and Jack's Place, and Jack's Place against any judgment or settlement that may be entered in the Wilkerson Action.

## COUNT III
## DECLARATORY JUDGMENT
## LIQUOR LIABILITY EXCLUSION

38.    HIC incorporates by reference paragraphs 1 through 37 of this complaint as if fully set forth here at length.

39.    The Wilkerson Complaint alleges that the Insureds negligently served alcohol to visibly intoxicated patrons, failed to monitor the alcohol intake of its patrons, and otherwise violated the Liquor Code.

40.    If it is determined these allegations are true, the Insureds will be held liable by reason of "causing or contributing to the intoxication of any person" and/or by reason of a "statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages" within the meaning of Liquor Liability exclusion to the HIC Policy such that HIC is entitled to a declaration that it has no obligation under the HIC Policy to indemnify Carly's Neighborhood Bar and Grill, LLC, Dara and Jack's Place, and Jack's Place against any settlement or judgment that may be entered in the Wilkerson Action.

WHEREFORE, plaintiff, Hospitality Insurance Company, requests that judgment be entered in its favor, and that the Court enter an order declaring that Hospitality Insurance Company is not required to indemnify Carly's Neighborhood Bar and Grill, LLC, Dara and Jack's Place, and Jack's Place against any judgment or settlement that may be entered in the Wilkerson Action.

**COUNT IV**
**DECLARATORY JUDGMENT**
**ATHLETICS OR SPORTS PARTICIPANTS EXCLUSION**

41.    HIC incorporates by reference paragraphs 1 through 40 of this complaint as if fully set forth here at length.

42.    Upon information and belief, the incident at issue in the Wilkerson Action took place during the course of a billiards game being conducted at the Insureds' bar.

43.    If it is determined that the bodily injury occurred "while practicing for or participating in any sports or athletic contest or exhibition" sponsored by the Insureds, the Athletics or Sports Participants Exclusion to the HIC policy applies such that HIC is entitled to a declaration that it has no obligation under the HIC Policy to indemnify Carly's Neighborhood Bar and Grill, LLC, Dara and Jack's Place, and Jack's Place against any settlement or judgment that may be entered in the Wilkerson Action.

WHEREFORE, plaintiff, Hospitality Insurance Company, requests that

judgment be entered in its favor, and that the Court enter an order declaring that Hospitality Insurance Company is not required to indemnify Carly's Neighborhood Bar and Grill, LLC, Dara and Jack's Place, and Jack's Place against any judgment or settlement that may be entered in the Wilkerson Action.

**BENNETT, BRICKLIN & SALTZBURG LLC**

BY: */s Nicholas A. Cummins*

NICHOLAS A. CUMMINS
IDENTIFICATION NO. 203238
1601 MARKET STREET, 16TH FLOOR
PHILADELPHIA, PA 19103
(267) 561-4300
(267) 561-6661 (Facsimile)
cummins@bbs-law.com
Attorney for Plaintiff,
Hospitality Insurance Company

Date:  May 24, 2018

14

# EXHIBIT A

**To Complaint for Declaratory Judgment**
***Hospitality Insurance Company v. Carley's Neighborhood Bar & Grill, et al.***

# Supreme Court of Pennsylvania

## Court of Common Pleas
## Civil Cover Sheet

_____FRANKLIN_____ County

| For Prothonotary Use Only: | RECEIVED |
|---|---|
| | NOV 01 2017 |
| Docket No:  2017-4092 | HMC |

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

## SECTION A

**Commencement of Action:**
- ☒ Complaint
- ☐ Writ of Summons
- ☐ Petition
- ☐ Transfer from Another Jurisdiction
- ☐ Declaration of Taking

| Lead Plaintiff's Name: | Lead Defendant's Name: |
|---|---|
| TARAY WILKERSON | DARA and JACK'S PLACE |

**Are money damages requested?** ☒ Yes ☐ No

Dollar Amount Requested: (check one)
- ☐ within arbitration limits
- ☒ outside arbitration limits

**Is this a *Class Action Suit*?** ☐ Yes ☒ No

**Is this an *MDJ Appeal*?** ☐ Yes ☒ No

Name of Plaintiff/Appellant's Attorney: Michael W. Landis, Esq.

☐ **Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)**

**Nature of the Case:** Place an "X" to the left of the **ONE** case category that most accurately describes your **PRIMARY CASE.** If you are making more than one type of claim, check the one that you consider most important.

## SECTION B

**TORT** *(do not include Mass Tort)*
- ☐ Intentional
- ☐ Malicious Prosecution
- ☐ Motor Vehicle
- ☐ Nuisance
- ☐ Premises Liability
- ☐ Product Liability *(does not include mass tort)*
- ☐ Slander/Libel/ Defamation
- ☒ Other:
  Negligence, assault,
  conspiracy, etc.

**MASS TORT**
- ☐ Asbestos
- ☐ Tobacco
- ☐ Toxic Tort - DES
- ☐ Toxic Tort - Implant
- ☐ Toxic Waste
- ☐ Other: _____

**PROFESSIONAL LIABLITY**
- ☐ Dental
- ☐ Legal
- ☐ Medical
- ☐ Other Professional: _____

**CONTRACT** *(do not include Judgments)*
- ☐ Buyer Plaintiff
- ☐ Debt Collection: Credit Card
- ☐ Debt Collection: Other
  _____
  _____
- ☐ Employment Dispute: Discrimination
- ☐ Employment Dispute: Other
  _____
  _____
- ☐ Other: _____
  _____

**REAL PROPERTY**
- ☐ Ejectment
- ☐ Eminent Domain/Condemnation
- ☐ Ground Rent
- ☐ Landlord/Tenant Dispute
- ☐ Mortgage Foreclosure: Residential
- ☐ Mortgage Foreclosure: Commercial
- ☐ Partition
- ☐ Quiet Title
- ☐ Other: _____

**CIVIL APPEALS**
Administrative Agencies
- ☐ Board of Assessment
- ☐ Board of Elections
- ☐ Dept. of Transportation
- ☐ Statutory Appeal: Other
  _____
  _____
- ☐ Zoning Board
- ☐ Other: _____
  _____

**MISCELLANEOUS**
- ☐ Common Law/Statutory Arbitration
- ☐ Declaratory Judgment
- ☐ Mandamus
- ☐ Non-Domestic Relations Restraining Order
- ☐ Quo Warranto
- ☐ Replevin
- ☐ Other: _____
  _____

*Updated 1/1/2011*

**LOWENTHAL & ABRAMS, P.C.**
By: Michael W. Landis, Esquire
Attorney I.D. No. 90525
555 City Line Avenue, Suite 500
Bala Cynwyd, PA 19004
 (610) 667-7511

**MAJOR JURY**

PROTHONOTARY
FRANKLIN COUNTY PA

2017 OCT 25  PM 2: 02

TIMOTHY S. SPONSELLER
PROTHONOTARY
DEPUTY _____ D.4.

**Attorneys for Plaintiffs**

---

**TARAY WILKERSON**
**714 Lincoln Way East**
**Chambersburg, PA 17201**

           v.

**DARA AND JACK'S PLACE**
**464 Hollywell Avenue**
**Chambersburg, PA 17201**

           and

**CARLEY'S NEIGHBORHOOD BAR**
**AND GRILL, LLC**
**464 Hollywell Avenue**
**Chambersburg, PA 17201**

           and

**JACK'S PLACE**
**464 Hollywell Avenue**
**Chambersburg, PA 17201**

           and

**ESAU LASHOW SCOTT**
**808 N. 32nd Street**
**Fort Pierce, FL 34947**

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

**COURT OF COMMON PLEAS**
**FRANKLIN COUNTY**

NO. 2017- 4092

**JURY TRIAL DEMANDED**

Judge: Shawn D Meyers

---

## NOTICE

"NOTICE"

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you.  you are warned that if you fail to do so the case may proceed without you and a

"AVISO"

"Le han demandado en corte. Si usted desea defender contra las demandas dispuestas en las páginas siguientes, usted debe tomar la acción en el plazo de veinte (20) días después de esta queja y se sirve al aviso, incorporando un aspecto escrito personalmente o y archivando en escribir con la corte sus defensas u objeciones a las demandas dispuestas contra usted el abogado le advierte que que si usted no puede hacer así que el caso puede proceder sin usted y un juicio se puede incorporar contra

ATTEST A TRUE COPY
Deanna Hartman
TIMOTHY S. SPONSELLER PROTHONOTARY

judgment may be entered against you buy the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property of other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER. IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

> LAWYER REFERENCE SERVICE
> FRANKLIN COUNTY
> PENNSYLVANIA BAR ASSOCIATION
> P.O. BOX 186
> HARRISBURG, PA 17108

usted compra la corte sin aviso adicional para cualquier dinero demandado en la queja o para cualquier otra demanda o relevación pedida por el demandante. Usted puede perder el dinero o la característica de otra endereza importante a usted.

USTED DEBE LLEVAR ESTE PAPEL SU ABOGADO INMEDIATAMENTE. SI USTED NO HACE QUE UN ABOGADO VAYA A O LLAME POR TELÉFONO La OFICINA DISPUESTA ABAJO. ESTA OFICINA PUEDE PROVEER DE USTED LA INFORMACIÓN SOBRE EMPLEAR A UN ABOGADO. SI USTED NO PUEDE PERMITIRSE AL HIRE A UN ABOGADO, ESTA OFICINA PUEDE PODER PROVEER DE USTED LA INFORMACIÓN SOBRE LAS AGENCIAS QUE LOS SERVICIOS JURÍDICOS DE LA OFERTA DE MAYO A LAS PERSONAS ELEGIBLES EN UN HONORARIO REDUCIDO O NINGÚN HONORARIO

> SERVICIO DE REFERENCIA LEGAL
> FRANKLIN COUNTY
> PENNSYLVANIA BAR ASSOCIATION
> P.O. BOX 186
> HARRISBURG, PA 17108

**LOWENTHAL & ABRAMS, P.C.**
By:  Michael W. Landis, Esquire
Attorney I.D. No. 90525
555 City Line Avenue, Suite 500
Bala Cynwyd, PA  19004
  (610) 667-7511

**MAJOR JURY**

**Attorneys for Plaintiffs**

| | |
|---|---|
| **TARAY WILKERSON**<br>714 Lincoln Way East<br>Chambersburg, PA 17201 | **COURT OF COMMON PLEAS**<br>**FRANKLIN COUNTY** |
| v. | **NO.** |
| **DARA AND JACK'S PLACE**<br>464 Hollywell Avenue<br>Chambersburg, PA 17201 | **JURY TRIAL DEMANDED** |
| and | |
| **CARLEY'S NEIGHBORHOOD BAR**<br>**AND GRILL, LLC**<br>464 Hollywell Avenue<br>Chambersburg, PA 17201 | |
| and | |
| **JACK'S PLACE**<br>464 Hollywell Avenue<br>Chambersburg, PA 17201 | |
| and | |
| **ESAU LASHOW SCOTT**<br>808 N. 32nd Street<br>Fort Pierce, FL 34947 | |

## COMPLAINT - PERSONAL INJURY

1.    Plaintiff, Taray Wilkerson, is an adult individual, citizen and resident of the

Commonwealth of Pennsylvania, residing at the address listed in the caption of this

Complaint.

3

2.       Defendant, Dara & Jack's Place, is a business entity or corporation doing business in the Borough of Chambersburg and Commonwealth of Pennsylvania and at all times material hereto was the owner, operator, manager, maintainer, supervisor, possessor, lessor, lessee and/or otherwise legally responsible for the bar and/or restaurant premises located at 464 Hollywell Avenue, Chambersburg, PA 17201 (hereinafter referred to as the "premises").

3.       At all times material hereto, defendant, Dara & Jack's Place, acted individually and/or failed to act individually, through its agents, workers, employees, servants and staff, who were acting within the course and scope of their agency and/or employment with the Defendant, Dara & Jack's Place, and/or the other Defendants herein.

4.       At all times relevant hereto, the Defendant, Dara & Jack's Place, owned, possessed, supervised, managed, leased, controlled and/or was otherwise responsible for the care, custody, control, supervision and maintenance of the premises.

5.       Defendant, Carley's Neighborhood Bar and Grill, LLC, is a business entity or corporation doing business in the Borough of Chambersburg and Commonwealth of Pennsylvania and at all times material hereto was the owner, operator, manager, maintainer, supervisor, possessor, lessor, lessee and/or otherwise legally responsible for the bar, tavern and/or restaurant upon the premises.

6.       At all times material hereto, defendant, Carley's Neighborhood Bar and Grill, LLC, acted individually and/or failed to act individually, through its agents, workers, employees, servants and staff, who were acting within the course and scope of their agency and/or employment with the Defendant, Carley's Neighborhood Bar and Grill, LLC, and/or the other Defendants herein.

4

7.     At all times relevant hereto, the Defendant, Carley's Neighborhood Bar and Grill, LLC, owned, possessed, supervised, managed, leased, controlled and/or was otherwise responsible for the care, custody, control, supervision and maintenance of the premises.

8.     Defendant, Jack's Place, is a business entity or corporation doing business in the Borough of Chambersburg and Commonwealth of Pennsylvania and at all times material hereto was the owner, operator, manager, maintainer, supervisor, possessor, lessor, lessee and/or otherwise legally responsible for the bar, tavern and/or restaurant upon the premises.

9.     At all times material hereto, defendant, Jack's Place, acted individually and/or failed to act individually, through its agents, workers, employees, servants and staff, who were acting within the course and scope of their agency and/or employment with the Defendant, Jack's Place, and/or the other Defendants herein.

10.     At all times relevant hereto, the Defendant, Jack's Place, owned, possessed, supervised, managed, leased, controlled and/or was otherwise responsible for the care, custody, control, supervision and maintenance of the premises.

11.     Defendant, Esau Lashow Scott, is an adult individual, citizen and resident of the State of Florida and residing in the Commonwealth of Pennsylvania with an address listed in the caption of this Complaint, and which at all times material hereto was a patron, customer, invitee, occupant and/or a duly authorized, servant, employee, volunteer and/or agent and/or worker of the other Defendants herein and was at all times material hereto upon the premises.

12.     At all times herein material, Defendants, Dara and Jack's Place, Carley's Neighborhood Bar and Grill, LLC, and Jack's Place (hereinafter collectively referred to as the "Bar Defendants"), were either acting individually and/or by through their/his/her/its duly authorized agents, servants, workman and/or employees who were acting in the course and

5

scope of their/his/her employment and in the furtherance of the Bar Defendants' businesses and affairs.

13.     At all times herein material, Defendant, Esau Lashow Scott, was either acting individually and/or by through his duly authorized agents and servants who were acting in the course and scope of their/his/her employment and in the furtherance of Defendant Scott's businesses and affairs.

14.     On or about Thursday, and in to Friday morning, November 5, 2015, and November 6, 2015, the Bar Defendants either individually, jointly and/or severally, did own, possess, operate and control for his/their/its own business, and/or by and through his/their/its duly authorized agents, servants, workmen, bartenders and/or employees acting within the scope of their employment and in furtherance of the business of said Defendants, the bar and/or tavern located at the premises identified above, and at all material times herein, held said premises open to the public for the purpose of vending and furnishing alcoholic beverages and other items as a dramshop to the public.

15.     On or about Friday, November 6, 2015, at approximately 1:30 a.m., Plaintiff was a business invitee and/or paying guest, lawfully and properly upon the premises of the Bar Defendants' aforesaid bar, tavern and/or restaurant at the above address, when Plaintiff was caused to be injured due to the intentional, negligent and/or careless conduct of each of the Defendants, either acting individually and/or by and through his/their/its duly authorized agents, servants, workmen, bartenders, employees and/or bailees who were acting within the course and scope of their employment and authority.

16.     The Bar Defendants' employees intentionally, willfully, maliciously, wantonly, carelessly and/or negligently allowed, authorized and/or approved conduct that would cause

6

harm to the body of the Plaintiff, which physical contact was unprovoked, unconsented to and excessive in nature.

17. The Bar Defendants' and their employees carelessly and/or negligently allowed, authorized and/or approved conduct that would lead to, enhance, accelerate and/or embrace such likelihood of harm to the body of the Plaintiff, which physical contact was unprovoked, unconsented to and excessive in nature.

18. The Bar Defendants, acting either individually and/or by and through their duly authorized agents, servants, workmen and/or employees, acted in such a negligent manner that they failed to properly aid and protect Plaintiff while she was lawfully on the aforesaid premises.

19. The Bar Defendants, individually, jointly and/or severally, by and through his/their/its duly authorized agents, servants, workmen, bartenders, employees, and/or bailees caused the Plaintiff to be struck with a pool and/or billiards ball on or about various parts of her body, and also with great force and violence, struck Plaintiff, and knocked her to the ground.

20. At the aforementioned time and location, the Bar Defendants had in their employ certain bartenders and/or bouncers who negligently and carelessly allowed Plaintiff to be struck by such pool and/or billiards ball on or about various parts of her body.

21. At the aforementioned time and place, the Bar Defendants had in their employ or were certain bartenders and/or bouncers and/or employees and individuals who negligently and carelessly failed to address the hostile events at the time of the incident that allowed Plaintiff to be struck with a pool and/or billiards ball.

7

22. The Bar Defendants, either individually and/or by and through their duly authorized agents, servants, workmen, bartenders, bouncers and/or employees, acted in such a negligent manner that they failed to remove belligerent patrons, customers and/or others who they served alcohol to from their premises and also failed to properly aid and protect the Plaintiff while she was lawfully on the aforementioned premises.

23. The Bar Defendants had a duty to use reasonable care to select employees, agents, servants, staff, bartenders, bouncers, workers and/or managers who were competent and fit to perform the duties required of an employee.

24. The Bar Defendants knew, or should have known that their employees, bartenders, bouncers, workers and/or managers would be likely to operate the bar, tavern and/or restaurnant in a negligent and careless manner, and did negligently fail to perform their duties when they hired these employees.

25. The Bar Defendants knew or in the exercise of reasonable care should have known that the aforesaid employees, bartenders and/or bouncers, were not competent or fit for the duties required of them.

26. Since Plaintiff was a lawful business invitee, the Bar Defendants had a duty to protect Plaintiff from an unreasonable risk of harm.

27. At the aforementioned time and place and for a long time prior thereto, the Bar Defendants failed to monitor the conduct of the workers, employees, agents, servants, bartenders, bouncers, and/or other Defendants herein.

28. The Bar Defendants at no time provided adequate or proper training to their employees, agents, bartenders, bouncers, workmen, servants and/or other Defendants herein on handling confrontations with customers.

8

29.     The Bar Defendants knew, or in the exercise of reasonable supervision should have known of the potential for violence, and it is further averred that the Bar Defendants did fail to terminate the employees, bartenders and/or bouncers who with violate, dangerous and careless propensities allowed the potential for violence.

30.     The Bar Defendant employees, agents, bartenders, bouncers, workmen and/or servants negligently, carelessly and/or recklessly instigated a fight that resulted in harm to Plaintiff.

31.     At the aforementioned time and place and at all times herein material, Defendant Scott participated in such fight that resulted in harm to Plaintiff.

32.     At the aforementioned time and place and at all times herein material, the Bar Defendants negligently and carelessly allowed and initiated a fight involving patrons and Defendant Scott that resulted in harm to Plaintiff.

33.     At the aforementioned time and place and at all time herein material, the Bar Defendants failed to appreciate the hostile environment between their employees, workmen, bartenders and/or servants, other patrons, customers and/or guests, and Defendant Scott that such hostility escalated and caused harm to Plaintiff.

34.     As a result of the aforementioned negligence and carelessness of all Defendants, Plaintiff was caused to be struck by a pool and/or billiards ball and she sustained serious, painful and permanent injuries as more fully stated hereinafter.

**COUNT I**
**TARAY WILKERSON v. DARA AND JACK'S PLACE**
**Negligence/ Personal Injury**

35.     Plaintiff incorporates herein the allegations set forth in the previous paragraphs, inclusive, as if set forth here at length.

36.     At all times mentioned, the accident and Plaintiff's injuries and damages were

caused by the negligence and/or carelessness of this Defendant, and the negligence and/or

carelessness of this Defendant consisted of, *inter alia*, the following:

   a.     failing to employ proper and safe, agents, servants, workmen, employees,
          bartenders, bailees and/or bouncers;

   b.     placing at the premises individuals who Defendants knew or should have
          known to have violent and dangerous propensities and characteristics;

   c.     failing to terminate an employment agreement with individuals who
          Defendants knew or should have known to have violent and dangerous
          propensities and characteristics;

   d.     failing to operate, manage, supervise, control and maintain the business
          operations in a proper, appropriate and reasonable manner so as to avoid
          confrontations between agents, servants, bouncers, employees of
          Defendants, business invitees, customers and/or patrons, including
          Plaintiff;

   e.     failing to monitor the alcohol intake of their/its guests;

   f.     tacitly allowing the attack to happen;

   g.     failing to adequately staff and supervise a bar and restaurant open to the
          public;

   h.     failing to exercise proper and adequate control, instruction and supervision
          of their agents, servants, workers, bouncers and/or employees, and their/its
          guests or patrons;

   i.     being otherwise careless in the operation of a bar and restaurant;

   j.     failing to properly train and instruct employees as to the performance of
          their duties;

   k.     engaging in such other tortious acts or omissions as discovery in this case
          may reveal;

   l.     failing to properly assist and aid Plaintiff while she was upon the premises
          from being battered and assaulted by other guests, customers and/or
          patrons of the Bar Defendants and other Defendants herein;

m.     failing to implement training programs for agents, servants and employees bartenders and/or bouncers in handling emergency situations at the restaurant, bar and/or tavern;

n.     failing to properly instruct its/their agents, servants, workmen, employees, bouncers and/or bailees;

o.     failing to protect Plaintiff as a business invitee and/or paying guest from harm in a proper, safe and prompt fashion;

p.     allowing and condoning the events which led to the harm caused upon Plaintiff;

q.     failing to remove other unruly and rowdy patrons from the premises;

r.     failing to use due care under the circumstances;

s.     failing to promptly call the police when events began which led to Plaintiff being struck, battered and assaulted;

t.     failing to have properly trained security guards and/or bouncers;

u.     negligently causing fear, terror and fright within the Plaintiff;

v.     failing to perform background checks on employees, agents, workers and/or bouncers;

w.     failing to have policies on handling confrontations with customers;

x.     negligently creating an atmosphere of violence;

y.     failing to monitor the alcohol intake of the employees and/or bouncers and customers, guests or patrons;

z.     negligently serving alcoholic beverages to intoxicated individuals;

aa.    failing to require intervention training, like T.I.P.S., or other similar training of its servers and/or bouncers and/or employees; and

bb.    being otherwise careless and negligent under the law and violating the Liquor Code, 47 Section 1-101, *et seq.*, and/or 47 P.S. Section 4-493, *et seq.*

37.    As a direct result of the negligent and/or careless conduct of Defendants, Plaintiff

suffered various serious and permanent personal injuries, serious impairments of body

11

functions and/or permanent serious disfigurement, and/or aggravation of pre-existing conditions, including but not limited to: orbital fracture and laceration to her left eye, injuries to her head, face, eyes and vision impairment, scarring to her face and head, and neurological and emotional injuries, and any other ills and injuries all to Plaintiff's great loss and detriment.

38.     As a result of the negligence and carelessness of Defendants, Plaintiff's injuries caused and continue to cause pain, discomfort, and limitation of motion, all of which may be permanent.

39.     As a result of these injures, all of which are to Plaintiff's great financial detriment and loss, Plaintiff has in the past, is presently and may in the future suffer great pain, anguish, sickness and agony and will continue to suffer for an indefinite time.

40.     Furthermore as a result and in addition to all the injuries and losses suffered, Plaintiff has incurred or will incur medical, rehabilitative and other related expenses in the amount equal to and/or in excess of any applicable health insurance coverage for which Plaintiff has not been reimbursed and upon which the Plaintiff makes a claim for payment in the present action.

41.     As a further result of the negligence and carelessness of Defendants, Plaintiff has sustained a loss of earnings and a loss of earning capacity.

42.     As a direct and proximate result of Defendants' negligence and carelessness, Plaintiff has incurred, and will in the future incur other financial and economic losses, including medical expenses for the diagnosis, treatment, such as surgical intervention and injections, and rehabilitation of the injuries sustained as a result of the accident.

12

43.     As a further result of the negligence and carelessness of Defendants, Plaintiff has been unable to attend to normal duties and activities, and sustained a diminution in the ability to enjoy life and life's pleasures.

44.     As a further result of the negligence and carelessness of Defendants, Plaintiff has suffered physical and emotional pain and suffering.

45.     As a further result of the negligence and carelessness of Defendants, Plaintiff has been prevented and may be prevented in the future from performing his usual duties, occupations and vocations, all to his great loss and detriment.

**WHEREFORE** Plaintiff demands judgment in Plaintiff's favor and against Defendants, jointly and severally, in an amount in excess of Fifty Thousand Dollars ($50,000.00), plus all reasonable costs and interest and such other relief as this Honorable Court deems appropriate.

## COUNT II
## TARAY WILKERSON v. CARLEY'S NEIGHBORHOOD BAR AND GRILL, LLC
### Negligence/ Personal Injury

46.     Plaintiff incorporates herein the allegations set forth in the previous paragraphs, inclusive, as if set forth here at length.

47.     At all times mentioned, the accident and Plaintiff's injuries and damages were caused by the negligence and/or carelessness of this Defendant, and the negligence and/or carelessness of this Defendant consisted of, *inter alia*, the following:

    a.     failing to employ proper and safe, agents, servants, workmen, employees, bartenders, bailees and/or bouncers;

    b.     placing at the premises individuals who Defendants knew or should have known to have violent and dangerous propensities and characteristics;

13

c.    failing to terminate an employment agreement with individuals who Defendants knew or should have known to have violent and dangerous propensities and characteristics;

d.    failing to operate, manage, supervise, control and maintain the business operations in a proper, appropriate and reasonable manner so as to avoid confrontations between agents, servants, bouncers, employees of Defendants, business invitees, customers and/or patrons, including Plaintiff;

e.    failing to monitor the alcohol intake of their/its guests;

f.    tacitly allowing the attack to happen;

g.    failing to adequately staff and supervise a bar and restaurant open to the public;

h.    failing to exercise proper and adequate control, instruction and supervision of their agents, servants, workers, bouncers and/or employees, and their/its guests or patrons;

i.    being otherwise careless in the operation of a bar and restaurant;

j.    failing to properly train and instruct employees as to the performance of their duties;

k.    engaging in such other tortious acts or omissions as discovery in this case may reveal;

l.    failing to properly assist and aid Plaintiff while she was upon the premises from being battered and assaulted by other guests, customers and/or patrons of the Bar Defendants and other Defendants herein;

m.    failing to implement training programs for agents, servants and employees bartenders and/or bouncers in handling emergency situations at the restaurant, bar and/or tavern;

n.    failing to properly instruct its/their agents, servants, workmen, employees, bouncers and/or bailees;

o.    failing to protect Plaintiff as a business invitee and/or paying guest from harm in a proper, safe and prompt fashion;

p.    allowing and condoning the events which led to the harm caused upon Plaintiff;

14

q.    failing to remove other unruly and rowdy patrons from the premises;

r.    failing to use due care under the circumstances;

s.    failing to promptly call the police when events began which led to Plaintiff being struck, battered and assaulted;

t.    failing to have properly trained security guards and/or bouncers;

u.    negligently causing fear, terror and fright within the Plaintiff;

v.    failing to perform background checks on employees, agents, workers and/or bouncers;

w.    failing to have policies on handling confrontations with customers;

x.    negligently creating an atmosphere of violence;

y.    failing to monitor the alcohol intake of the employees and/or bouncers and customers, guests or patrons;

z.    negligently serving alcoholic beverages to intoxicated individuals;

aa.   failing to require intervention training, like T.I.P.S., or other similar training of its servers and/or bouncers and/or employees; and

bb.   being otherwise careless and negligent under the law and violating the Liquor Code, 47 Section 1-101, *et seq.*, and/or 47 P.S. Section 4-493, *et seq.*

48.    As a direct result of the negligent and/or careless conduct of Defendants, Plaintiff suffered various serious and permanent personal injuries, serious impairments of body functions and/or permanent serious disfigurement, and/or aggravation of pre-existing conditions, including but not limited to: orbital fracture and laceration to her left eye, injuries to her head, face, eyes and vision impairment, scarring to her face and head, and neurological and emotional injuries, and any other ills and injuries all to Plaintiff's great loss and detriment.

49.     As a result of the negligence and carelessness of Defendants, Plaintiff's injuries caused and continue to cause pain, discomfort, and limitation of motion, all of which may be permanent.

50.     As a result of these injures, all of which are to Plaintiff's great financial detriment and loss, Plaintiff has in the past, is presently and may in the future suffer great pain, anguish, sickness and agony and will continue to suffer for an indefinite time.

51.     Furthermore as a result and in addition to all the injuries and losses suffered, Plaintiff has incurred or will incur medical, rehabilitative and other related expenses in the amount equal to and/or in excess of any applicable health insurance coverage for which Plaintiff has not been reimbursed and upon which the Plaintiff makes a claim for payment in the present action.

52.     As a further result of the negligence and carelessness of Defendants, Plaintiff has sustained a loss of earnings and a loss of earning capacity.

53.     As a direct and proximate result of Defendants' negligence and carelessness, Plaintiff has incurred, and will in the future incur other financial and economic losses, including medical expenses for the diagnosis, treatment, such as surgical intervention and injections, and rehabilitation of the injuries sustained as a result of the accident.

54.     As a further result of the negligence and carelessness of Defendants, Plaintiff has been unable to attend to normal duties and activities, and sustained a diminution in the ability to enjoy life and life's pleasures.

55.     As a further result of the negligence and carelessness of Defendants, Plaintiff has suffered physical and emotional pain and suffering.

16

56.     As a further result of the negligence and carelessness of Defendants, Plaintiff has been prevented and may be prevented in the future from performing his usual duties, occupations and vocations, all to his great loss and detriment.

**WHEREFORE** Plaintiff demands judgment in Plaintiff's favor and against Defendants, jointly and severally, in an amount in excess of Fifty Thousand Dollars ($50,000.00), plus all reasonable costs and interest and such other relief as this Honorable Court deems appropriate.

**COUNT III**
**TARAY WILKERSON v. JACK'S PLACE**
**Negligence/ Personal Injury**

57.     Plaintiff incorporates herein the allegations set forth in the previous paragraphs, inclusive, as if set forth here at length.

58.     At all times mentioned, the accident and Plaintiff's injuries and damages were caused by the negligence and/or carelessness of this Defendant, and the negligence and/or carelessness of this Defendant consisted of, *inter alia*, the following:

    a.    failing to employ proper and safe, agents, servants, workmen, employees, bartenders, bailees and/or bouncers;

    b.    placing at the premises individuals who Defendants knew or should have known to have violent and dangerous propensities and characteristics;

    c.    failing to terminate an employment agreement with individuals who Defendants knew or should have known to have violent and dangerous propensities and characteristics;

    d.    failing to operate, manage, supervise, control and maintain the business operations in a proper, appropriate and reasonable manner so as to avoid confrontations between agents, servants, bouncers, employees of Defendants, business invitees, customers and/or patrons, including Plaintiff;

    e.    failing to monitor the alcohol intake of their/its guests;

    f.    tacitly allowing the attack to happen;

17

g.     failing to adequately staff and supervise a bar and restaurant open to the public;

h.     failing to exercise proper and adequate control, instruction and supervision of their agents, servants, workers, bouncers and/or employees, and their/its guests or patrons;

i.     being otherwise careless in the operation of a bar and restaurant;

j.     failing to properly train and instruct employees as to the performance of their duties;

k.     engaging in such other tortious acts or omissions as discovery in this case may reveal;

l.     failing to properly assist and aid Plaintiff while she was upon the premises from being battered and assaulted by other guests, customers and/or patrons of the Bar Defendants and other Defendants herein;

m.     failing to implement training programs for agents, servants and employees bartenders and/or bouncers in handling emergency situations at the restaurant, bar and/or tavern;

n.     failing to properly instruct its/their agents, servants, workmen, employees, bouncers and/or bailees;

o.     failing to protect Plaintiff as a business invitee and/or paying guest from harm in a proper, safe and prompt fashion;

p.     allowing and condoning the events which led to the harm caused upon Plaintiff;

q.     failing to remove other unruly and rowdy patrons from the premises;

r.     failing to use due care under the circumstances;

s.     failing to promptly call the police when events began which led to Plaintiff being struck, battered and assaulted;

t.     failing to have properly trained security guards and/or bouncers;

u.     negligently causing fear, terror and fright within the Plaintiff;

v.     failing to perform background checks on employees, agents, workers and/or bouncers;

w.     failing to have policies on handling confrontations with customers;

x.     negligently creating an atmosphere of violence;

y.     failing to monitor the alcohol intake of the employees and/or bouncers and customers, guests or patrons;

z.     negligently serving alcoholic beverages to intoxicated individuals;

aa.     failing to require intervention training, like T.I.P.S., or other similar training of its servers and/or bouncers and/or employees; and

bb.     being otherwise careless and negligent under the law and violating the Liquor Code, 47 Section 1-101, *et seq*., and/or 47 P.S. Section 4-493, *et seq.*

59.     As a direct result of the negligent and/or careless conduct of Defendants, Plaintiff suffered various serious and permanent personal injuries, serious impairments of body functions and/or permanent serious disfigurement, and/or aggravation of pre-existing conditions, including but not limited to: orbital fracture and laceration to her left eye, injuries to her head, face, eyes and vision impairment, scarring to her face and head, and neurological and emotional injuries, and any other ills and injuries all to Plaintiff's great loss and detriment.

60.     As a result of the negligence and carelessness of Defendants, Plaintiff's injuries caused and continue to cause pain, discomfort, and limitation of motion, all of which may be permanent.

61.     As a result of these injures, all of which are to Plaintiff's great financial detriment and loss, Plaintiff has in the past, is presently and may in the future suffer great pain, anguish, sickness and agony and will continue to suffer for an indefinite time.

62.     Furthermore as a result and in addition to all the injuries and losses suffered, Plaintiff has incurred or will incur medical, rehabilitative and other related expenses in the

amount equal to and/or in excess of any applicable health insurance coverage for which Plaintiff has not been reimbursed and upon which the Plaintiff makes a claim for payment in the present action.

63.     As a further result of the negligence and carelessness of Defendants, Plaintiff has sustained a loss of earnings and a loss of earning capacity.

64.     As a direct and proximate result of Defendants' negligence and carelessness, Plaintiff has incurred, and will in the future incur other financial and economic losses, including medical expenses for the diagnosis, treatment, such as surgical intervention and injections, and rehabilitation of the injuries sustained as a result of the accident.

65.     As a further result of the negligence and carelessness of Defendants, Plaintiff has been unable to attend to normal duties and activities, and sustained a diminution in the ability to enjoy life and life's pleasures.

66.     As a further result of the negligence and carelessness of Defendants, Plaintiff has suffered physical and emotional pain and suffering.

67.     As a further result of the negligence and carelessness of Defendants, Plaintiff has been prevented and may be prevented in the future from performing his usual duties, occupations and vocations, all to his great loss and detriment.

**WHEREFORE** Plaintiff demands judgment in Plaintiff's favor and against Defendants, jointly and severally, in an amount in excess of Fifty Thousand Dollars ($50,000.00), plus all reasonable costs and interest and such other relief as this Honorable Court deems appropriate.

## COUNT IV
## TARAY WILKERSON v. ESAU LASHOW SCOTT
### Negligence

68.     Plaintiff incorporates herein the allegations set forth in the previous paragraphs,

inclusive, as if set forth here at length.

69.     At all times mentioned, the accident and Plaintiff's injuries and damages were

caused by the negligence and/or carelessness of this Defendant, and the negligence and/or

carelessness of this Defendant consisted of, *inter alia*, the following:

    a.     failing to keep control and causing a fight;

    b.     placing at the premises himself and individuals which Defendants knew or
           should have known to have violent and dangerous propensities and
           characteristics;

    c.     failing to deescalate confrontations with individuals who Defendant knew
           or should have known to have violent and dangerous propensities and
           characteristics;

    d.     failing to control, restrain and maintain conduct in a proper, appropriate
           and reasonable manner so as to avoid confrontations between other
           business invitees and/or patrons of the Bar Defendants, including Plaintiff;

    e.     drinking intoxicating liquors in an unreasonable and careless manner;

    f.     tacitly allowing the attack to happen;

    g.     failing to exercise proper and adequate control, instruction and supervision
           of himself, his agents, servants, or others for whom he was with at the
           tavern, bar and/or restaurant;

    h.     being otherwise careless and reckless;

    i.     engaging in such other tortious acts or omissions as discovery in this case
           may reveal;

    j.     failing to properly assist and aid Plaintiff while she was struck, battered
           and assaulted by Defendants;

21

k.   failing to maintain a safe environment for all individuals at the tavern, bar and/or restaurant and failing to protect Plaintiff from harm in a proper, safe and prompt fashion;

l.   allowing and condoning the striking of Plaintiff;

m.   striking, assaulting and battering Plaintiff while she was at the tavern;

n.   failing to use due care under the circumstances;

o.   failing to promptly call the police when Plaintiff was struck, battered and assaulted;

p.   striking the Plaintiff in the face with a pool and/or billiards ball;

q.   negligently causing fear, terror and fright within the Plaintiff; and

r.   negligently creating an atmosphere of violence.

70.   As a direct result of the negligent and/or careless conduct of Defendants, Plaintiff suffered various serious and permanent personal injuries, serious impairments of body functions and/or permanent serious disfigurement, and/or aggravation of pre-existing conditions, including but not limited to: orbital fracture and laceration to her left eye, injuries to her head, face, eyes and vision impairment, scarring to her face and head, and neurological and emotional injuries, and any other ills and injuries all to Plaintiff's great loss and detriment.

71.   As a result of the negligence and carelessness of Defendants, Plaintiff's injuries caused and continue to cause pain, discomfort, and limitation of motion, all of which may be permanent.

72.   As a result of these injures, all of which are to Plaintiff's great financial detriment and loss, Plaintiff has in the past, is presently and may in the future suffer great pain, anguish, sickness and agony and will continue to suffer for an indefinite time.

73.     Furthermore as a result and in addition to all the injuries and losses suffered, Plaintiff has incurred or will incur medical, rehabilitative and other related expenses in the amount equal to and/or in excess of any applicable health insurance coverage for which Plaintiff has not been reimbursed and upon which the Plaintiff makes a claim for payment in the present action.

74.     As a further result of the negligence and carelessness of Defendants, Plaintiff has sustained a loss of earnings and a loss of earning capacity.

75.     As a direct and proximate result of Defendants' negligence and carelessness, Plaintiff has incurred, and will in the future incur other financial and economic losses, including medical expenses for the diagnosis, treatment, such as surgical intervention and injections, and rehabilitation of the injuries sustained as a result of the accident.

76.     As a further result of the negligence and carelessness of Defendants, Plaintiff has been unable to attend to normal duties and activities, and sustained a diminution in the ability to enjoy life and life's pleasures.

77.     As a further result of the negligence and carelessness of Defendants, Plaintiff has suffered physical and emotional pain and suffering.

78.     As a further result of the negligence and carelessness of Defendants, Plaintiff has been prevented and may be prevented in the future from performing his usual duties, occupations and vocations, all to his great loss and detriment.

**WHEREFORE** Plaintiff demands judgment in Plaintiff's favor and against Defendants, jointly and severally, in an amount in excess of Fifty Thousand Dollars ($50,000.00), plus all reasonable costs and interest and such other relief as this Honorable Court deems appropriate

## COUNT V
## TARAY WILKERSON v. ALL DEFENDANTS
### Assault and Battery

79.     Plaintiff incorporates herein the allegations set forth in the previous paragraphs, inclusive, as if set forth here at length.

80.     As a result of the aforementioned negligence, recklessness and carelessness conduct of the Defendants, Plaintiff was caused to be struck by a pool and/or billiards ball and sustained serious, painful and permanent injuries.

**WHEREFORE** Plaintiff demands judgment in Plaintiff's favor and against Defendants, jointly and severally, in an amount in excess of Fifty Thousand Dollars ($50,000.00), plus all reasonable costs and interest and such other relief as this Honorable Court deems appropriate.

## COUNT VI
## TARAY WILKERSON v. ALL DEFENDANTS
### Conspiracy

81.     Plaintiff incorporates herein the allegations set forth in the previous paragraphs, inclusive, as if set forth here at length.

82.     Defendants, employees, managers, agents, workmen and/or bouncers conspired to work together to create a hostile environment within the bar, tavern and/or restaurant thereby allowing the assault, battery, and injuries to Plaintiff.

83.     These actions were unlawful and/or taken for an unlawful purpose in furtherance of the plan to promote the business and profitability of the Defendants and to also deprive Plaintiff of her rights.

24

84.     Defendants by and through themselves, or through their employees, managers, agents, servants, bartenders and/or bouncers agreed to, *inter alia*, the following:

a.   allow the hostile atmosphere and gamesmanship to develop over the pool and/or billiards gaming area of the tavern, bar and/or restaurant;

b.   engage in such gamesmanship without due regard for the safety of others;

c.   failing to protect those within the tavern, bar and/or restaurant and who were invitees of the Bar Defendants, like Plaintiff;

d.   failing to monitor the intake by patrons, customers and/or guests of intoxicating liquors and/or drinks, thereby allowing the hostile environment to escalate in a dangerous and careless manner;

e.   wanton, maliciously and/or recklessly placing Plaintiff in harm's way;

f.   wanton, maliciously and/or recklessly creating an unsafe environment for Plaintiff; and

g.   allowing Defendants and other patrons, customers and/or guests to use items, like pool and/or billiards balls, in a hostile, dangerous and/or careless manner.

85.     The Bar Defendants, employees, managers, servants, agents and/or bouncers, acting with the course and scope of their authority performed these and other overt acts with other Defendants herein in furtherance of the conspiracy.

86.     These actions were tortious, negligent, careless, reckless, and jointly undertaken by Defendants in pursuit of a common goal of generating business, profits and gamesmanship that would create and develop hostile, dangerous and inimical actions that led to inflicting injury upon individuals within the bar, tavern and/or restaurant, like Plaintiff.

87.    As a result of this conspiracy, Plaintiff was caused to be stuck and did sustain serious, painful and permanent injuries as abovedescribed.

**WHEREFORE** Plaintiff demands judgment in Plaintiff's favor and against Defendants, jointly and severally, in an amount in excess of Fifty Thousand Dollars ($50,000.00), plus all reasonable costs and interest and such other relief as this Honorable Court deems appropriate.

Respectfully submitted,

**LOWENTHAL & ABRAMS, P.C.**

By: _____

Michael W. Landis, Esquire

Date:                                     Attorney for Plaintiff

**INTERROGATORIES, REQUESTS FOR PRODUCTION OF DOCUMENTS, SUPPLEMNTAL REQUESTS AND REQUEST FOR ADMISSIONS ARE SERVED ATTACHED TO PLAINTIFFS' COMPLAINT AT THE TIME SERVICE OF ORIGINAL PROCESS IS AND/OR WAS EFFECTED.**

## VERIFICATION

I, Taray Wilkerson, hereby verify that I am the Plaintiff in the within action; that the statements made in the foregoing Complaint are true and correct to best of my knowledge, information and belief; and that this Verification is made subject to the penalties of 18 Pa. Cons. Stat. Ann. § 4904, relating to unsworn falsification to authorities.

Taray Wilkerson

# EXHIBIT B

**To Complaint for Declaratory Judgment**

***Hospitality Insurance Company v. Carley's Neighborhood Bar & Grill, et al.***

## Copy Certification

On this ___6 th___ day of ___March___, 2018, I certify that the preceding or attached document, is a true, exact, complete, and unaltered copy made by me of ___Carley's Neighborhood Bar · Grill___, presented by the document custodian, ___Sandra Haley___, and that, to the best of my knowledge, the photocopied document is neither a public record nor a publicly recordable document, certified copies of which are available from an official source other than a notary.


___Sandra Haley___
Print Name

___3/6/18___
Date:

___Sandra Haley___
Signature

**HOSPITALITY**™
Insurance Company
Taking the Risk Out of Hospitality

## Hospitality Insurance Company
106 Southville Road
Southborough, MA 01772
(877) 366-1140

# COMMERCIAL GENERAL LIABILITY COVERAGE PART
## DECLARATIONS PAGE

POLICY NO.: 37004410GL

| NAMED INSURED AND MAILING ADDRESS |
| --- |
| Carley's Neighborhood Bar & Grill LLC DBA<br>Jack & Dara's<br>464 Hollywell Avenue<br>Chambersburg, PA  17201 |

| AGENT AND MAILING ADDRESS |
| --- |
| *W.N. Tuscano Agency, Inc.<br>950 Highland Avenue<br>P.O.Box 1027<br>Greensburg, PA  15601 |

Agent Code: 1805

POLICY PERIOD: FROM __12/31/2014__ TO __12/31/2015__ AT 12:00 AM STANDARD TIME
AT THE INSURED'S MAILING ADDRESS SHOWN ABOVE.

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY,
WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

| LIMITS OF INSURANCE | | |
| --- | --- | --- |
| Each Occurrence Limit | $1,000,000 | |
| Legal Liability to Premises Rented to You Limit | $50,000 | Any one premises |
| Medical Expense Limit | $5,000 | Any one person |
| Personal and Advertising Injury Limit | $1,000,000 | Any one person or organization |
| General Aggregate Limit | $2,000,000 | |
| Products / Completed Operations Aggregate Limit | $1,000,000 | |

| RETROACTIVE DATE (CG 00 02 ONLY) |
| --- |

THIS INSURANCE DOES NOT APPLY TO "BODILY INJURY", "PROPERTY DAMAGE" OR "PERSONAL AND
ADVERTISING INJURY"  WHICH OCCURS BEFORE THE RETROACTIVE DATE, IF ANY, SHOWN BELOW.

RETROACTIVE DATE: _____
         (ENTER DATE OR "NONE" IF NO RETROACTIVE DATE APPLIES)

| DESCRIPTION OF BUSINESS |
| --- |

**FORM OF BUSINESS:**  Limited Liability Company

**BUSINESS DESCRIPTION:**  464 Hollywell Avenue, Chambersburg, Franklin County PA, 17201

      Restaurant

**ALL PREMISES YOU OWN, RENT OR OCCUPY**

| LOC NO. | ADDRESS OF ALL PREMISES YOU OWN, RENT OR OCCUPY |
|---------|-------------------------------------------------|
| 001 | 464 Hollywell Avenue, Chambersburg, Franklin County PA, 17201 |

| | CLASSIFICATION AND PREMIUM | | |
|---|---|---|---|
| LOC NO. | CLASSIFICATION | CODE NO. | PREMIUM BASE |
| 001 | Beverage Stores - soft drink and beer | 10146 | ▰▰▰ Gross Sales |
| 001 | Restaurants - with sales of alcoholic beverages that are 30% or more of but less than 75% of the total annual receipts of the restaurants - with dance floor | 16915 | ▰▰▰ Gross Sales |
| | | | Premium: ▰▰▰ |

| | STATE TAX OR OTHER (if applicable) | | | |
|---|---|---|---|---|
| | TOTAL PREMIUM (SUBJECT TO AUDIT) | | | ▰▰▰ |
| PREMIUM SHOWN IS PAYABLE: AT INCEPTION | | | | |
| | AT EACH ANNIVERSARY | | | |
| | (IF POLICY PERIOD IS MORE THAN ONE YEAR AND PREMIUM IS PAID IN ANNUAL INSTALLMENTS) | | | |
| AUDIT PERIOD (IF APPLICABLE) | [X] ANNUALLY | [ ] SEMI-ANNUALLY | [ ] QUARTERLY | [ ] MONTHLY |

Countersigned At:  **Southborough, MA**                              Date:  **03/06/2018**   By: _____

Authorized Representative

## COMMERCIAL GENERAL LIABILITY COVERAGE PART
### DECLARATIONS PAGE (Continued)

---

| FORMS AND ENDORSEMENTS APPLICABLE TO ALL COVERAGE PARTS |
|---|

### Forms and Endorsements made a part of this policy at time of issue:
Applicable Forms and Endorsements are omitted if shown in specific Coverage Part/Coverage Form Declarations.

| Form Number | | Description |
|---|---|---|
| CG0001 | (1207) | COMMERCIAL GENERAL LIABILITY COVERAGE FORM (OCCURRENCE VERSION) |
| CG002 | (0512) | AMENDMENT OF LIQUOR LIABILITY EXCLUSION |
| CG0068 | (0509) | EXCLUSION - RECORDING AND DISTRIBUTION OF MATERIAL OR INFORMATION IN ' |
| CG200 | (1111) | ASSAULT AND BATTERY EXCLUSION |
| CG2101 | (1185) | EXCLUSION - ATHLETIC OR SPORTS PARTICIPANTS |
| CG2144 | (0798) | LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT |
| CG2147 | (1207) | EMPLOYMENT-RELATED PRACTICES EXCLUSION |
| CG2149 | (0999) | TOTAL POLLUTION EXCLUSION ENDORSEMENT |
| CG2167 | (1204) | FUNGI OR BACTERIA EXCLUSION |
| CG2171 | (0608) | EXCLUSION OF OTHER ACTS OF TERRORISM COMMITTED OUTSIDE THE UNITED S |
| CG2175 | (0608) | EXCLUSION OF CERTIFIED ACTS OF TERRORISM COMMITTED OUTSIDE THE US |
| CG2176 | (0108) | EXCLUSION OF PUNITIVE DAMAGES RELATED TO A CERTIFIED ACT OF TERRORIS |
| CG2196 | (0305) | SILICA OR SILICA-RELATED DUST EXCLUSION |
| CG2407 | (0196) | PRODUCTS/COMPLETED OPERATIONS HAZARD REDEFINED |
| IL0003 | (0908) | CALCULATION OF PREMIUM |
| IL0017 | (1198) | COMMON POLICY CONDITIONS |
| IL0021 | (0908) | NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT (BROAD FORM) |
| IL0246 | (0907) | PENNSYLVANIS CHANGES-CANCELLATION AND NONRENEWAL |
| IL0910 | (0702) | PENNSYLVANIA NOTICE |
| TS | (1111) | TERRORISM INSURANCE PREMIUM DISCLOSURE NOTICE |

Date Issued: 12/31/2014



Endorsement #1



**HOSPITALITY™**
Insurance Company
Taking the Risk Out of Hospitality

**Hospitality Insurance Company**
106 Southville Road
Southborough, MA 01772
(877) 366-1140

# COMMERCIAL GENERAL LIABILITY COVERAGE PART
## DECLARATIONS PAGE

**POLICY NO.: 37004410GL**

| NAMED INSURED AND MAILING ADDRESS | AGENT AND MAILING ADDRESS |
|---|---|
| Carley's Neighborhood Bar & Grill LLC DBA<br>Jack & Dara's<br>464 Hollywell Avenue<br>Chambersburg, PA 17201 | *W.N. Tuscano Agency, Inc.<br>950 Highland Avenue<br>P.O.Box 1027<br>Greensburg, PA 15601 |

Agent Code: 1805

POLICY PERIOD: FROM __12/31/2014__ TO __12/31/2015__ AT 12:00 AM STANDARD TIME
AT THE INSURED'S MAILING ADDRESS SHOWN ABOVE.

**AMENDED: 12/31/2014**

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY,
WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

| LIMITS OF INSURANCE | | |
|---|---|---|
| Each Occurrence Limit | $1,000,000 | |
| Legal Liability to Premises Rented to You Limit | $50,000 | Any one premises |
| Medical Expense Limit | $5,000 | Any one person |
| Personal and Advertising Injury Limit | $1,000,000 | Any one person or organization |
| General Aggregate Limit | $2,000,000 | |
| Products / Completed Operations Aggregate Limit | $1,000,000 | |

| RETROACTIVE DATE (CG 00 02 ONLY) |
|---|
| THIS INSURANCE DOES NOT APPLY TO "BODILY INJURY", "PROPERTY DAMAGE" OR "PERSONAL AND ADVERTISING INJURY" WHICH OCCURS BEFORE THE RETROACTIVE DATE, IF ANY, SHOWN BELOW.<br><br>RETROACTIVE DATE: _____<br>(ENTER DATE OR "NONE" IF NO RETROACTIVE DATE APPLIES) |

| DESCRIPTION OF BUSINESS |
|---|
| **FORM OF BUSINESS:** Limited Liability Company |
| **BUSINESS DESCRIPTION:** 464 Hollywell Avenue, Chambersburg, Franklin County PA, 17201 |
| Restaurant |

ALL PREMISES YOU OWN, RENT OR OCCUPY

| LOC NO. | ADDRESS OF ALL PREMISES YOU OWN, RENT OR OCCUPY |
|---------|--------------------------------------------------|
| 001 | 464 Hollywell Avenue, Chambersburg, Franklin County PA, 17201 |

## CLASSIFICATION AND PREMIUM

| LOC NO. | CLASSIFICATION | CODE NO. | PREMIUM BASE |
|---------|----------------|----------|--------------|
| 001 | Beverage Stores - soft drink and beer | 10146 | ▮▮▮▮ Gross Sales |
| 001 | Restaurants - with sales of alcoholic beverages that are 30% or more of but less than 75% of the total annual receipts of the restaurants - with dance floor | 16915 | ▮▮▮▮ Gross Sales |
| | | | **Premium:** ▮▮▮ |

| | STATE TAX OR OTHER (if applicable) | |
|--|--|--|
| | TOTAL PREMIUM (SUBJECT TO AUDIT) | ▮▮▮ |
| PREMIUM SHOWN IS PAYABLE: | AT INCEPTION | |
| | AT EACH ANNIVERSARY (IF POLICY PERIOD IS MORE THAN ONE YEAR AND PREMIUM IS PAID IN ANNUAL INSTALLMENTS) | |

| AUDIT PERIOD (IF APPLICABLE) | [X] ANNUALLY | [ ] SEMI-ANNUALLY | [ ] QUARTERLY | [ ] MONTHLY |
|------------------------------|--------------|-------------------|---------------|-------------|

Countersigned At: **Southborough, MA**          Date: **03/06/2018**   By: _Rick E W_

Authorized Representative

# COMMERCIAL GENERAL LIABILITY COVERAGE PART
## DECLARATIONS PAGE (Continued)

---

### FORMS AND ENDORSEMENTS APPLICABLE TO ALL COVERAGE PARTS

#### Forms and Endorsements made a part of this policy at time of issue:
Applicable Forms and Endorsements are omitted if shown in specific Coverage Part/Coverage Form Declarations.

| Form Number | | Description |
|---|---|---|
| CG0001 | (1207) | COMMERCIAL GENERAL LIABILITY COVERAGE FORM (OCCURRENCE VERSION) |
| CG002 | (0512) | AMENDMENT OF LIQUOR LIABILITY EXCLUSION |
| CG0068 | (0509) | EXCLUSION - RECORDING AND DISTRIBUTION OF MATERIAL OR INFORMATION IN ' |
| CG200 | (1111) | ASSAULT AND BATTERY EXCLUSION |
| CG2101 | (1185) | EXCLUSION - ATHLETIC OR SPORTS PARTICIPANTS |
| CG2144 | (0798) | LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT |
| CG2147 | (1207) | EMPLOYMENT-RELATED PRACTICES EXCLUSION |
| CG2149 | (0999) | TOTAL POLLUTION EXCLUSION ENDORSEMENT |
| CG2167 | (1204) | FUNGI OR BACTERIA EXCLUSION |
| CG2171 | (0608) | EXCLUSION OF OTHER ACTS OF TERRORISM COMMITTED OUTSIDE THE UNITED S |
| CG2175 | (0608) | EXCLUSION OF CERTIFIED ACTS OF TERRORISM COMMITTED OUTSIDE THE US |
| CG2176 | (0108) | EXCLUSION OF PUNITIVE DAMAGES RELATED TO A CERTIFIED ACT OF TERRORIS |
| CG2196 | (0305) | SILICA OR SILICA-RELATED DUST EXCLUSION |
| CG2407 | (0196) | PRODUCTS/COMPLETED OPERATIONS HAZARD REDEFINED |
| IL0003 | (0908) | CALCULATION OF PREMIUM |
| IL0017 | (1198) | COMMON POLICY CONDITIONS |
| IL0021 | (0908) | NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT (BROAD FORM) |
| IL0246 | (0907) | PENNSYLVANIS CHANGES-CANCELLATION AND NONRENEWAL |
| IL0910 | (0702) | PENNSYLVANIA NOTICE |
| TS | (1111) | TERRORISM INSURANCE PREMIUM DISCLOSURE NOTICE |

Date Issued: 01/22/2015

---

# POLICY AMENDMENT PAGE

Your policy has been amended for the following reasons.

> Endorsement
> Correcting the name insured .
> Endorsement Resulted in No Change in Annual Premium



# COMMERCIAL GENERAL LIABILITY INSURANCE POLICY

(Occurrence Form)

HOSPITALITY™
Insurance Company

Taking the Risk Out of Hospitality

95A Turnpike Road
Westborough, MA 01581
(508) 366-1140

THIS POLICY JACKET WITH THE COMMERCIAL GENERAL LIABILITY POLICY FORM, DECLARATIONS
PAGE AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETES THIS POLICY.

FORM # CGL-PJ-100 10/08

# Commercial General Liability Insurance Policy

## Table of Contents

|  | Page |
|---|---|
| Section I - Coverages | |
| Coverage A - Bodily Injury and Property Damage Liability | 1 |
| Coverage B - Personal and Advertising Injury Liability | 6 |
| Coverage C - Medical Payments | 7 |
| Supplimental Payments - Coverage A and B | 8 |
| Section II - Who is an Insured | 9 |
| Section III - Limits of Insurance | 10 |
| Section IV - Commercial General Liability Conditions | 10 |
| Section V - Definitions | 12 |

In witness whereof, we have caused this Policy to be executed and attested, and if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

E. Thomas McCabe Jr.
Chairman of the Board

John W. Tympanick
President and CEO

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

### 1. Insuring Agreement

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

 © ISO Properties, Inc., 2006

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

## 2. Exclusions

This insurance does not apply to:

### a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

### b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

### d. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

 © ISO Properties, Inc., 2006 **CG 00 01 12 07** ☐

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

  **(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

  **(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

  **(a)** Less than 26 feet long; and

  **(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

  **(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

  **(b)** the operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

 © ISO Properties, Inc., 2006   □

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Distribution Of Material In Violation Of Statutes**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**(3)** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

 © ISO Properties, Inc., 2006   □

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. Insuring Agreement

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

### 2. Exclusions

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of websites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Distribution Of Material In Violation Of Statutes**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**(3)** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**COVERAGE C MEDICAL PAYMENTS**

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

© ISO Properties, Inc., 2006

## 2. Exclusions

We will not pay expenses for "bodily injury":

### a. Any Insured

To any insured, except "volunteer workers".

### b. Hired Person

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

### c. Injury On Normally Occupied Premises

To a person injured on that part of premises you own or rent that the person normally occupies.

### d. Workers Compensation And Similar Laws

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

### e. Athletics Activities

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

### f. Products-Completed Operations Hazard

Included within the "products-completed operations hazard".

### g. Coverage A Exclusions

Excluded under Coverage A.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

   a. All expenses we incur.

   b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

   c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

   d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

   e. All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

   f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

   g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

   These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

   a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

   b. This insurance applies to such liability assumed by the insured;

   c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

   d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

   e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

   f. The indemnitee:

      (1) Agrees in writing to:

         (a) Cooperate with us in the investigation, settlement or defense of the "suit";

         (b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

         (c) Notify any other insurer whose coverage is available to the indemnitee; and

         (d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

      (2) Provides us with written authorization to:

         (a) Obtain records and other information related to the "suit"; and

© ISO Properties, Inc., 2006

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

### SECTION II – WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by,

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

© ISO Properties, Inc., 2006

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

**a.** Medical expenses under Coverage **C**;

**b.** Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**c.** Damages under Coverage **B**.

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to Paragraph **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

**a.** Damages under Coverage **A**; and

**b.** Medical expenses under Coverage **C**

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

    **(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

    **(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph a. above; or

   c. All other parts of the world if the injury or damage arises out of:

      (1) Goods or products made or sold by you in the territory described in Paragraph a. above;

      (2) The activities of a person whose home is in the territory described in Paragraph a. above, but is away for a short time on your business; or

      (3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

   provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph f. does not include that part of any contract or agreement:

      (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

      (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

         (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

         (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

      (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

 © ISO Properties, Inc., 2006 CG 00 01 12 07   □

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

 © ISO Properties, Inc., 2006

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

  **a.** Means:

    **(1)** Work or operations performed by you or on your behalf; and

    **(2)** Materials, parts or equipment furnished in connection with such work or operations.

  **b.** Includes:

    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

    **(2)** The providing of or failure to provide warnings or instructions.

© ISO Properties, Inc., 2006

**CG 00 01 12 07** ☐

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDMENT OF LIQUOR LIABILITY EXCLUSION –

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion c. of COVERAGE A (Section I) is replaced by the following:

    **c.** "Bodily injury" for which any insured may be held liable by reason of:

        **(1)** Causing or contributing to the intoxication of any person;

        **(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

        **(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

COMMERCIAL GENERAL LIABILITY
CG 00 68 05 09

# RECORDING AND DISTRIBUTION OF MATERIAL OR INFORMATION IN VIOLATION OF LAW EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **q.** of Paragraph **2. Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**B.** Exclusion **p.** of Paragraph **2. Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**Hospitality Insurance Company**

## Assault and/or Battery Exclusion

The coverage under this policy does not apply to any claim, suit, cost or expense arising out of assault and/or battery, or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of any Insured or Insured's employees, patrons, or any other person.  Nor does this insurance apply with respect to any charges or allegations of negligent hiring, training, placement or supervision. Furthermore, assault and/or battery includes "bodily injury" resulting from the use of reasonable force to protect persons or property.  "This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property."

POLICY NUMBER:                                                                    **COMMERCIAL GENERAL LIABILITY**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – ATHLETIC OR SPORTS PARTICIPANTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

**SCHEDULE**

**Description of Operations:**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to any operations shown in the Schedule, this insurance does not apply to "bodily injury" to any person while practicing for or participating in any sports or athletic contest or exhibition that you sponsor.

POLICY NUMBER:

**COMMERCIAL GENERAL LIABILITY**
**CG 21 44 07 98**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **Premises:** |
| **Project:** |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance applies only to "bodily injury", "property damage", "personal and advertising injury" and medical expenses arising out of:

1. The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or
2. The project shown in the Schedule.

COMMERCIAL GENERAL LIABILITY
CG 21 47 12 07

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section I – **Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

  **(a)** Refusal to employ that person;

  **(b)** Termination of that person's employment; or

  **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section I – **Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

  **(a)** Refusal to employ that person;

  **(b)** Termination of that person's employment; or

  **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

 © ISO Properties, Inc., 2006

**COMMERCIAL GENERAL LIABILITY**
**CG 21 49 09 99**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

 Copyright, Insurance Services Office, Inc., 1998

COMMERCIAL GENERAL LIABILITY
CG 21 67 12 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

© ISO Properties, Inc., 2003                    **Page 1 of 1**    □

COMMERCIAL GENERAL LIABILITY
CG 21 71 06 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF OTHER ACTS OF TERRORISM COMMITTED OUTSIDE THE UNITED STATES; CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of an "other act of terrorism" that is committed outside of the United States (including its territories and possessions and Puerto Rico), but within the "coverage territory". However, this exclusion applies only when one or more of the following are attributed to such act:

**1.** The total of insured damage to all types of property exceeds $25,000,000 (valued in U.S. dollars).   In   determining   whether   the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

**2.** Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

**a.** Physical injury that involves a substantial risk of death; or

**b.** Protracted and obvious physical disfigurement; or

**c.** Protracted loss of or impairment of the function of a bodily member or organ; or

**3.** The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

**4.** The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**5.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

With respect to this exclusion, Paragraphs **1.** and **2.** describe the thresholds used to measure the magnitude of an incident of an "other act of terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether this exclusion will apply to that incident.

**B.** The following definitions are added:

**1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

 © Insurance Services Office, Inc., 2008   □

**2.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act;

**b.** The act resulted in damage:

**(1)** Within the United States (including its territories and possessions and Puerto Rico); or

**(2)** Outside of the United States in the case of:

**(a)** An air carrier (as defined in Section 40102 of title 49, United States Code) or United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs; or

**(b)** The premises of any United States mission; and

**c.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**3.** "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not a "certified act of terrorism".

Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

**C.** In the event of an "other act of terrorism" that is not subject to this exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

**D.** If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

© Insurance Services Office, Inc., 2008
**CG 21 71 06 08**   □

COMMERCIAL GENERAL LIABILITY
CG 21 75 06 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM AND EXCLUSION OF OTHER ACTS OF TERRORISM COMMITTED OUTSIDE THE UNITED STATES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism", or out of an "other act of terrorism" that is committed outside of the United States (including its territories and possessions and Puerto Rico), but within the "coverage territory". However, with respect to an "other act of terrorism", this exclusion applies only when one or more of the following are attributed to such act:

**1.** The total of insured damage to all types of property exceeds $25,000,000 (valued in US dollars). In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

**2.** Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

**a.** Physical injury that involves a substantial risk of death; or

**b.** Protracted and obvious physical disfigurement; or

**c.** Protracted loss of or impairment of the function of a bodily member or organ; or

**3.** The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

**4.** The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**5.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

With respect to this exclusion, Paragraphs **1.** and **2.** describe the thresholds used to measure the magnitude of an incident of an "other act of terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether this exclusion will apply to that incident.

**B.** The following definitions are added:

**1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

© Insurance Services Office, Inc., 2008

**2.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act;

**b.** The act resulted in damage:

**(1)** Within the United States (including its territories and possessions and Puerto Rico); or

**(2)** Outside of the United States in the case of:

**(a)** An air carrier (as defined in Section 40102 of title 49, United States Code) or United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs; or

**(b)** The premises of any United States mission; and

**c.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**3.** "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not a "certified act of terrorism".

Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

**C.** In the event of any incident of a "certified act of terrorism" or an "other act of terrorism" that is not subject to this exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

 © Insurance Services Office, Inc., 2008 **CG 21 75 06 08**    □

COMMERCIAL GENERAL LIABILITY
CG 21 76 01 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF PUNITIVE DAMAGES RELATED TO A CERTIFIED ACT OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM PUNITIVE DAMAGES**

Damages arising, directly or indirectly, out of a "certified act of terrorism" that are awarded as punitive damages.

**B.** The following definition is added:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

        © ISO Properties, Inc., 2007               □

COMMERCIAL GENERAL LIABILITY
CG 21 96 03 05

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# SILICA OR SILICA-RELATED DUST EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Silica Or Silica-Related Dust**

**a.** "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

**b.** "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

**c.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Silica Or Silica-Related Dust**

**a.** "Personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

**b.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**C.** The following definitions are added to the **Definitions** Section:

**1.** "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

**2.** "Silica-related dust" means a mixture or combination of silica and other dust or particles.

© ISO Properties, Inc., 2004

POLICY NUMBER:

**COMMERCIAL GENERAL LIABILITY**
**CG 24 07 01 96**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PRODUCTS/COMPLETED OPERATIONS HAZARD REDEFINED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

**Description of Premises and Operations:**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to "bodily injury" or "property damage" arising out of "your products" manufactured, sold, handled or distributed:

1. On, from or in connection with the use of any premises described in the Schedule, or

2. In connection with the conduct of any operation described in the Schedule, when conducted by you or on your behalf,

Paragraph **a.** of the definition of "Products-completed operations hazard" in the DEFINITIONS Section is replaced by the following:

"Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" that arises out of "your products" if the "bodily injury" or "property damage" occurs after you have relinquished possession of those products.

IL 00 03 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 Copyright, Insurance Services Office, Inc., 1998   □

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

    A. Under any Liability Coverage, to "bodily injury" or "property damage":

    (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

    (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

    C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

    (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

    (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

    (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

    "Hazardous properties" includes radioactive, toxic or explosive properties.

    "Nuclear material" means "source material", "special nuclear material" or "by-product material".

© ISO Properties, Inc., 2007

□

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

- **(a)** Any "nuclear reactor";
- **(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

- **(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;
- **(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

 © ISO Properties, Inc., 2007   □

IL 02 46 09 07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** The **Cancellation** Common Policy Condition is replaced by the following:

**CANCELLATION**

**1.** The first Named Insured shown in the Declarations may cancel this policy by writing or giving notice of cancellation.

**2. Cancellation Of Policies In Effect For Less Than 60 Days**

We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 30 days before the effective date of cancellation.

**3. Cancellation Of Policies In Effect For 60 Days Or More**

If this policy has been in effect for 60 days or more or if this policy is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

**a.** You have made a material misrepresentation which affects the insurability of the risk. Notice of cancellation will be mailed or delivered at least 15 days before the effective date of cancellation.

**b.** You have failed to pay a premium when due, whether the premium is payable directly to us or our agents or indirectly under a premium finance plan or extension of credit. Notice of cancellation will be mailed at least 15 days before the effective date of cancellation.

**c.** A condition, factor or loss experience material to insurability has changed substantially or a substantial condition, factor or loss experience material to insurability has become known during the policy period. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

**d.** Loss of reinsurance or a substantial decrease in reinsurance has occurred, which loss or decrease, at the time of cancellation, shall be certified to the Insurance Commissioner as directly affecting in-force policies. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

© ISO Properties, Inc., 2006

e. Material failure to comply with policy terms, conditions or contractual duties. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

f. Other reasons that the Insurance Commissioner may approve. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

This policy may also be cancelled from inception upon discovery that the policy was obtained through fraudulent statements, omissions or concealment of facts material to the acceptance of the risk or to the hazard assumed by us.

4. We will mail or deliver our notice to the first Named Insured's last mailing address known to us. Notice of cancellation will state the specific reasons for cancellation.

5. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

6. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata and will be returned within 10 business days after the effective date of cancellation. If the first Named Insured cancels, the refund may be less than pro rata and will be returned within 30 days after the effective date of cancellation. The cancellation will be effective even if we have not made or offered a refund.

7. If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

B. The following are added and supersede any provisions to the contrary:

1. **Nonrenewal**

   If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal, stating the specific reasons for nonrenewal, to the first Named Insured at least 60 days before the expiration date of the policy.

2. **Increase Of Premium**

   If we increase your renewal premium, we will mail or deliver to the first Named Insured written notice of our intent to increase the premium at least 30 days before the effective date of the premium increase.

Any notice of nonrenewal or renewal premium increase will be mailed or delivered to the first Named Insured's last known address. If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

IL 09 10 07 02

# PENNSYLVANIA NOTICE

An Insurance Company, its agents, employees, or service contractors acting on its behalf, may provide services to reduce the likelihood of injury, death or loss. These services may include any of the following or related services incident to the application for, issuance, renewal or continuation of, a policy of insurance:

1. Surveys;

2. Consultation or advice; or

3. Inspections.

The "Insurance Consultation Services Exemption Act" of Pennsylvania provides that the Insurance Company, its agents, employees or service contractors acting on its behalf, is not liable for damages from injury, death or loss occurring as a result of any act or omission by any person in the furnishing of or the failure to furnish these services.

The Act does not apply:

1. If the injury, death or loss occurred during the actual performance of the services and was caused by the negligence of the Insurance Company, its agents, employees or service contractors;

2. To consultation services required to be performed under a written service contract not related to a policy of insurance; or

3. If any acts or omissions of the Insurance Company, its agents, employees or service contractors are judicially determined to constitute a crime, actual malice, or gross negligence.

---

**Instruction to Policy Writers**

Attach the Pennsylvania Notice to all new and renewal certificates insuring risks located in Pennsylvania.

---

    © ISO Properties, Inc., 2001       □

# TERRORISM INSURANCE PREMIUM DISCLOSURE AND OPPORTUNITY TO REJECT

This notice contains important information about the Terrorism Risk Insurance Act and your option to reject terrorism insurance coverage. Please read it carefully.

## THE TERRORISM RISK INSURANCE ACT

The Terrorism Risk Insurance Act, including all amendments ("TRIA" or the "Act"), establishes a program to spread the risk of catastrophic losses from certain acts of terrorism between insurers and the federal government. If an individual insurer's losses from a "certified act of terrorism" exceed a specified deductible amount, the government will reimburse the insurer for 85% of losses paid in excess of the deductible, but only if aggregate industry losses from such an act exceed $100 million. An insurer that has met its insurer deductible is not liable for any portion of losses in excess of $100 billion per year. Similarly, the federal government is not liable for any losses covered by the Act that exceed this amount. If aggregate insured losses exceed $100 billion, losses up to that amount may be pro-rated, as determined by the Secretary of the Treasury.

## MANDATORY AVAILABILITY OF COVERAGE FOR "CERTIFIED ACTS OF TERRORISM"

TRIA requires insurers to make coverage available for any loss that occurs within the United States (or outside of the U.S. in the case of U.S. missions and certain air carriers and vessels), results from a "certified act of terrorism" AND that is otherwise covered under your policy.

A "certified act of terrorism" means:

Any act that is certified by the Secretary [of the Treasury], in concurrence with the Secretary of State, and
the Attorney General of the United States
(i) to be an act of terrorism;

(ii) to be a violent act or an act that is dangerous to –
  (I) human life;
  (II) property; or
  (III) infrastructure;

(iii) to have resulted in damage within the United States, or outside of the United States in the case of –
  (I) an air carrier (as defined in section 40102 of title 49, United States Code) or United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States); or
  (II) the premises of a United States mission; and

(iv) to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**REJECTING TERRORISM INSURANCE COVERAGE – WHAT YOU MUST DO**
We have included in your policy coverage for losses resulting from "certified acts of terrorism" as defined above.
THE PREMIUM CHARGE FOR THIS COVERAGE APPEARS ON THE DECLARATIONS PAGE OF THE POLICY. If we are providing you with a quote, the premium charge will also appear on your quote as a separate line item charge.

Note: With respect to Excess or Umbrella policies, this offer of coverage pertains only to those lines of business covered by TRIA and, more specifically, does not apply to commercial automobile insurance. In addition, this offer of TRIA coverage is expressly conditioned upon your acceptance of coverage for "certified acts of terrorism" on all underlying insurance policies that are subject to TRIA. If you reject such coverage on your primary liability policies, you must also reject it on your Excess or Umbrella policy.
IF YOU CHOOSE TO REJECT THIS COVERAGE, PLEASE CHECK THE BOX BELOW, SIGN THE ACKNOWLEDGMENT, AND RETURN IT IN THE ENCLOSED ENVELOPE.
Please ensure any rejection is received within thirty (30) days of the effective date of your policy.

_____I hereby reject this offer of coverage. I understand that by rejecting this offer, I will have no coverage for losses arising from a "certified acts of terrorism" and my policy will be endorsed accordingly.


_____          _____
Policyholder/Applicant Signature                    Date


_____
Print Name

The summary of the Act and the coverage under your policy contained in this notice is necessarily general in nature. Your policy contains specific terms, definitions, exclusions and conditions. In case of any conflict, your policy language will control the resolution of all coverage questions. Please read your policy carefully.
**If you have any questions regarding this notice, please contact your agent.**

Policy Number:                                   Insured Name:

Agency Code:


Please fold on line. Company address must show through window.

Effective Date:                           Hospitality Insurance Company
                                          95A Turnpike Road
                                          Westborough, MA 01581

# EXHIBIT C

**To Complaint for Declaratory Judgment**
***Hospitality Insurance Company v. Carley's Neighborhood Bar & Grill, et al.***

# COURT OF COMMON PLEAS OF FRANKLIN COUNTY

## DOCKET



**Docket Number: CP-28-CR-0002047-2015**

# CRIMINAL DOCKET

**Court Case**

Commonwealth of Pennsylvania

v.

Esau Lashow Scott

Page 1 of 15

## CASE INFORMATION

Cross Court Docket Nos: 1281 MDA 2016

Judge Assigned: Van Horn, Carol L.          Date Filed: 11/19/2015          Initiation Date: 11/06/2015

OTN: L 980450-2          LOTN: L 980450-2          Originating Docket No: MJ-39201-CR-0000633-2015

Initial Issuing Authority: Glenn Kenneth Manns          Final Issuing Authority: Glenn Kenneth Manns

Arresting Agency: Chambersburg Police Dept          Arresting Officer: Hinds, Patrick J.

Complaint/Incident #: C201515446

Case Local Number Type(s)          Case Local Number(s)

## STATUS INFORMATION

| Case Status: | Closed | Status Date | Processing Status | Complaint Date: | 11/06/2015 |
|---|---|---|---|---|---|
| | | 06/28/2017 | Completed | | |
| | | 07/28/2016 | Awaiting Appellate Court Decision | | |
| | | 06/29/2016 | Sentenced/Penalty Imposed | | |
| | | 05/24/2016 | Awaiting PSI | | |
| | | 05/24/2016 | Awaiting Sentencing | | |
| | | 05/23/2016 | Awaiting Sentencing | | |
| | | 05/04/2016 | Awaiting Trial | | |
| | | 04/15/2016 | Awaiting Trial Scheduling | | |
| | | 12/23/2015 | Awaiting Pre-Trial Conference | | |
| | | 11/19/2015 | Awaiting Formal Arraignment | | |
| | | 11/19/2015 | Awaiting Filing of Information | | |

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF FRANKLIN COUNTY

## DOCKET



**Docket Number: CP-28-CR-0002047-2015**

# CRIMINAL DOCKET

**Court Case**

Commonwealth of Pennsylvania

v.

Esau Lashow Scott

Page 2 of 15

### CALENDAR EVENTS

| Case Calendar Event Type | Schedule Start Date | Start Time | Room | Judge Name | Schedule Status |
|---|---|---|---|---|---|
| Formal Arraignment | 12/23/2015 | 9:00 am | Courtroom #1 - Franklin County Courthouse | President Judge Carol L. Van Horn | Scheduled |
| Call of the Trial List (On Bond) | 02/15/2016 | 9:00 am | Courtroom #1 - Franklin County Courthouse | President Judge Carol L. Van Horn | Scheduled |
| Call of the Trial List (Incarcerated) | 02/15/2016 | 1:00 pm | Franklin County Jail Courtroom | President Judge Carol L. Van Horn | Scheduled |
| Disposition | 03/02/2016 | 1:30 pm | Courtroom #1 - Franklin County Courthouse | President Judge Carol L. Van Horn | Continued |
| Disposition | 03/23/2016 | 1:30 pm | Courtroom #1 - Franklin County Courthouse | President Judge Carol L. Van Horn | Scheduled |
| Call of the Trial List (Incarcerated) | 04/15/2016 | 1:00 pm | Franklin County Jail Courtroom | President Judge Carol L. Van Horn | Scheduled |
| Call of the Trial List (On Bond) | 04/18/2016 | 9:00 am | Courtroom #1 - Franklin County Courthouse | President Judge Carol L. Van Horn | Scheduled |
| Pre-Trial Conference | 05/02/2016 | 9:00 am | Courtroom #1 - Franklin County Courthouse | President Judge Carol L. Van Horn | Scheduled |
| Sentencing | 06/29/2016 | 9:00 am | Courtroom #1 - Franklin County Courthouse | President Judge Carol L. Van Horn | Scheduled |

### CONFINEMENT INFORMATION

| Confinement Known As Of | Confinement Type | Destination Location | Confinement Reason | Still in Custody |
|---|---|---|---|---|
| 07/26/2016 | State Correctional Institution | SCI Greene | | Yes |

### DEFENDANT INFORMATION

Date Of Birth: ███/1974    City/State/Zip: Waynesboro, PA  15370-8089

### CASE PARTICIPANTS

| Participant Type | Name |
|---|---|
| Defendant | Scott, Esau Lashow |

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF FRANKLIN COUNTY

## DOCKET



**Docket Number: CP-28-CR-0002047-2015**

## CRIMINAL DOCKET

**Court Case**

Commonwealth of Pennsylvania

v.

Esau Lashow Scott

Page 3 of 15

## BAIL INFORMATION

Scott, Esau Lashow                                                                                    Nebbia Status: None

| Bail Action | Date | Bail Type | Percentage | Amount | | |
|---|---|---|---|---|---|---|
| | | | | | Bail Posting Status | Posting Date |
| Set | 11/06/2015 | Monetary | | $100,000.00 | | |
| Revoke | 05/23/2016 | Monetary | | $100,000.00 | | |

## CHARGES

| Seq. | Orig Seq. | Grade | Statute | Statute Description | Offense Dt. | OTN |
|---|---|---|---|---|---|---|
| 1 | 1 | F1 | 18 § 2702 §§A1 | Aggravated Assault | 11/06/2015 | L 980450-2 |
| 2 | 6 | F2 | 18 § 2702 §§A4 | Aggravated Assault | 11/06/2015 | L 980450-2 |
| 3 | 2 | M2 | 18 § 2701 §§A1 | Simple Assault | 11/06/2015 | L 980450-2 |
| 4 | 3 | M3 | 18 § 5503 §§A1 | Disorderly Conduct Engage In Fighting | 11/06/2015 | L 980450-2 |
| 5 | 5 | M3 | 18 § 5503 §§A1 | Disorderly Conduct Engage In Fighting | 11/06/2015 | L 980450-2 |
| 6 | 4 | M3 | 18 § 5503 §§A1 | Disorderly Conduct Engage In Fighting | 11/06/2015 | L 980450-2 |

## DISPOSITION SENTENCING/PENALTIES

| Disposition | | |
|---|---|---|
| Case Event | Disposition Date | Final Disposition |
| Sequence/Description | Offense Disposition | Grade   Section |
| Sentencing Judge | Sentence Date | Credit For Time Served |
| Sentence/Diversion Program Type | Incarceration/Diversionary Period | Start Date |
| Sentence Conditions | | |

**Held for Court (Lower Court)**          Defendant Was Present

| | | | |
|---|---|---|---|
| Lower Court Disposition | 11/17/2015 | Not Final | |
| 1 / Aggravated Assault | Held for Court (Lower Court) | F1 | 18 § 2702 §§ A1 |
| 3 / Simple Assault | Held for Court (Lower Court) | M2 | 18 § 2701 §§ A1 |
| 4 / Disorderly Conduct Engage In Fighting | Held for Court (Lower Court) | M3 | 18 § 5503 §§ A1 |
| 5 / Disorderly Conduct Engage In Fighting | Held for Court (Lower Court) | M3 | 18 § 5503 §§ A1 |
| 6 / Disorderly Conduct Engage In Fighting | Held for Court (Lower Court) | M3 | 18 § 5503 §§ A1 |

**Proceed to Court**

| | | | |
|---|---|---|---|
| Information Filed | 12/21/2015 | Not Final | |
| 1 / Aggravated Assault | Proceed to Court | F1 | 18 § 2702 §§ A1 |
| 2 / Aggravated Assault | Proceed to Court | F2 | 18 § 2702 §§ A4 |
| 3 / Simple Assault | Proceed to Court | M2 | 18 § 2701 §§ A1 |
| 4 / Disorderly Conduct Engage In Fighting | Proceed to Court | M3 | 18 § 5503 §§ A1 |
| 5 / Disorderly Conduct Engage In Fighting | Withdrawn Pursuant to Pa.R.Crim.P. 561(B) | M3 | 18 § 5503 §§ A1 |
| 6 / Disorderly Conduct Engage In Fighting | Charge Changed | M3 | 18 § 5503 §§ A1 |
| Replaced by 18 § 2702 §§ A4, Aggravated Assault | | | |

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF FRANKLIN COUNTY

## DOCKET



**Docket Number: CP-28-CR-0002047-2015**
# CRIMINAL DOCKET
**Court Case**

Commonwealth of Pennsylvania

v.

Esau Lashow Scott

Page 4 of 15

## DISPOSITION SENTENCING/PENALTIES

Disposition

| Case Event | Disposition Date | Final Disposition | |
|---|---|---|---|
| Sequence/Description | Offense Disposition | Grade | Section |
| Sentencing Judge | Sentence Date | | Credit For Time Served |
| Sentence/Diversion Program Type | Incarceration/Diversionary Period | | Start Date |
| Sentence Conditions | | | |

**Nolle Prossed (Case Continues)**

| Trial by Jury | 05/23/2016 | Not Final | |
|---|---|---|---|
| 1 / Aggravated Assault | Nolle Prossed (Case Continues) | F1 | 18 § 2702 §§ A1 |
| 2 / Aggravated Assault | Proceed to Court | F2 | 18 § 2702 §§ A4 |
| 3 / Simple Assault | Proceed to Court | M2 | 18 § 2701 §§ A1 |
| 4 / Disorderly Conduct Engage In Fighting | Proceed to Court | M3 | 18 § 5503 §§ A1 |
| 5 / Disorderly Conduct Engage In Fighting | Withdrawn Pursuant to Pa.R.Crim.P. 561(B) | M3 | 18 § 5503 §§ A1 |
| 6 / Disorderly Conduct Engage In Fighting | Charge Changed | M3 | 18 § 5503 §§ A1 |
| Replaced by 18 § 2702 §§ A4, Aggravated Assault | | | |

**Guilty**

| Trial by Jury | 05/23/2016 | Final Disposition | |
|---|---|---|---|
| 1 / Aggravated Assault | Nolle Prossed (Case Continues) | F1 | 18 § 2702 §§ A1 |
| Van Horn, Carol L. | 06/29/2016 | | |
| 2 / Aggravated Assault | Not Guilty | F2 | 18 § 2702 §§ A4 |
| Van Horn, Carol L. | 06/29/2016 | | |
| 3 / Simple Assault | Guilty | M2 | 18 § 2701 §§ A1 |
| Van Horn, Carol L. | 06/29/2016 | 237 Days | |
| Confinement | Min of 6.00 Months | 06/29/2016 | |
| | Max of 12.00 Months | | |
| | Other | | |

The defendant shall undergo  Anger Management Treatment and pay all costs.

The defendant shall undergo and successfully complete any program prison/probation officials deem necessary.

The defendant may NOT CONSUME any beverage containing alcohol or any controlled substance, unless lawfully prescribed, and shall submit to random urinalysis, breath or blood testing to ensure compliance.

The defendant shall pay court costs.

The defendant shall pay a fine in the amount of $150.00 .

The defendant shall pay per month for Supervision Fees (Act 35 - 18P.S. §11.1102).

The defendant shall pay restitution in the amount of $10,906.13 to CVC Board restitution.

The defendant shall pay $150.00 for the Central Booking Fee.

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports.  Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police.  Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF FRANKLIN COUNTY

## DOCKET



**Docket Number: CP-28-CR-0002047-2015**

# CRIMINAL DOCKET

**Court Case**

Commonwealth of Pennsylvania

v.

Esau Lashow Scott

Page 5 of 15

## DISPOSITION SENTENCING/PENALTIES

Disposition

| Case Event | Disposition Date | Final Disposition | |
|---|---|---|---|
| Sequence/Description | Offense Disposition | Grade | Section |
| Sentencing Judge | Sentence Date | | Credit For Time Served |
| Sentence/Diversion Program Type | Incarceration/Diversionary Period | | Start Date |
| Sentence Conditions | | | |

| | | | |
|---|---|---|---|
| 4 / Disorderly Conduct Engage In Fighting | Guilty | M3 | 18 § 5503 §§ A1 |
| Van Horn, Carol L. | 06/29/2016 | | |
| Confinement | Min of 6.00 Months | | |
| | Max of 12.00 Months | | |
| | Other | | |

The defendant shall undergo  Anger Management Treatment and pay all costs.

The defendant shall undergo and successfully complete any program prison/probation officials deem necessary.

The defendant may NOT CONSUME any beverage containing alcohol or any controlled substance, unless lawfully prescribed, and shall submit to random urinalysis, breath or blood testing to ensure compliance.

The defendant shall pay court costs.

The defendant shall pay a fine in the amount of $100.00.

The defendant shall pay per month for Supervision Fees (Act 35 - 18P.S. §11.1102).

| | | | |
|---|---|---|---|
| 5 / Disorderly Conduct Engage In Fighting | Withdrawn Pursuant to Pa.R.Crim.P. 561(B) | M3 | 18 § 5503 §§ A1 |
| Van Horn, Carol L. | 06/29/2016 | | |
| 6 / Disorderly Conduct Engage In Fighting | Charge Changed | M3 | 18 § 5503 §§ A1 |
| Replaced by 18 § 2702 §§ A4, Aggravated Assault | | | |
| Van Horn, Carol L. | 06/29/2016 | | |

**LINKED SENTENCES:**

**Link 1**

CP-28-CR-0002047-2015 - Seq. No. 4 (18§ 5503 §§ A1) - Confinement is Consecutive to

CP-28-CR-0002047-2015 - Seq. No. 3 (18§ 2701 §§ A1) - Confinement

---

CPCMS 9082

Printed: 05/24/2018

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports.  Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police.  Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF FRANKLIN COUNTY

## DOCKET



**Docket Number: CP-28-CR-0002047-2015**

# CRIMINAL DOCKET

**Court Case**

Commonwealth of Pennsylvania

v.

Esau Lashow Scott

Page 6 of 15

| COMMONWEALTH INFORMATION | ATTORNEY INFORMATION |
|---|---|
| **Name:** Franklin County District Attorney's Office | **Name:** Brian Walter Mains |
| District Attorney | Public Defender |
| **Supreme Court No:** | **Supreme Court No:** 310479 |
| **Phone Number(s):** | **Rep. Status:** Active |
| 717-261-3827 (Phone) | **Phone Number(s):** |
| **Address:** | 717-243-3341 (Phone) |
| Franklin County Courthouse | **Address:** |
| 157 Lincoln Way East | Martson Law Offices |
| Chambersburg, PA 17201 | 10 E High St |
| | Carlisle, PA 17013 |
| | Representing: Scott, Esau Lashow |

## ENTRIES

| Sequence Number | CP Filed Date | Document Date | Filed By |
|---|---|---|---|
| 1 | 11/06/2015 | | Manns, Glenn Kenneth |
| Bail Set - Scott, Esau Lashow | | | |
| 1 | 11/19/2015 | | Court of Common Pleas - Franklin County |
| Original Papers Received from Lower Court | | | |
| 1 | 12/21/2015 | | Commonwealth of Pennsylvania |
| Information Filed | | | |
| 1 | 12/23/2015 | | Scott, Esau Lashow |
| Appearance and Waiver of Arraignment | | | |
| 1 | 02/15/2016 | | Brink, Ian Michael |
| Motion for Scheduling | | | |
| 2 | 02/15/2016 | 02/15/2016 | Van Horn, Carol L. |
| Order/Disposition Hearing on 3/2/16 | | | |

AND NOW, this 15th day of February, 2016, the Defendant's Motion for Scheduling is hereby GRANTED. The Call of the List hearing that was originally scheduled for February 15, 2016 is rescheduled to the 2nd day of March, 2016 at 1:00 p.m. for a Disposition hearing before the President Judge Van Horn in the assigned courtroom, Franklin County Courthouse in Chambersburg, Franklin County, Pennsylvania.

Clerk to serve ...

Brink, Ian Michael

02/15/2016          Interoffice

Commonwealth of Pennsylvania

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF FRANKLIN COUNTY

## DOCKET



**Docket Number: CP-28-CR-0002047-2015**

# CRIMINAL DOCKET

**Court Case**

Commonwealth of Pennsylvania

v.

Esau Lashow Scott

Page 7 of 15

## ENTRIES

| Sequence Number | CP Filed Date | Document Date | Filed By |
|---|---|---|---|
| Service To | | Service By | |
| Issue Date | Service Type | Status Date | Service Status |
| 02/15/2016 | Interoffice | | |

| | | | |
|---|---|---|---|
| 1 | 03/02/2016 | | Brink, Ian Michael |

Motion for Continuance Defense Request

| | | | |
|---|---|---|---|
| 2 | 03/02/2016 | 03/02/2016 | Van Horn, Carol L. |

Order/Disposition Hearing Rescheduled to 3/23/26

AND NOW, this 2nd day of March, 2016, the Defendant's Motion for Scheduling is hereby GRANTED. The Disposition Hearing scheduled for 3/2/16 is rescheduled to the 23rd day of March, 2016 at 1:00 p.m. for a Disposition Hearing in Courtroom #1, Franklin County Courthouse in Chambersburg, Franklin County, Pennsylvania.

Clerk to serve ...

Brink, Ian Michael

03/02/2016  Interoffice

Commonwealth of Pennsylvania

03/02/2016  Interoffice

| | | | |
|---|---|---|---|
| 1 | 03/23/2016 | | Brink, Ian Michael |

Motion for Continuance Defense Request

| | | | |
|---|---|---|---|
| 2 | 03/23/2016 | 03/23/2016 | Van Horn, Carol L. |

Order Granting Motion for Continuance

AND NOW, this 23rd day of March, 2016, the Defendant's application for a continuance his hereby granted and trial of the above captioned case is continued until May 9, 2016. The time between today and May 9, 2016 is excluded from the period for commencement of trial under Pa. R. of Crim. P 600.

The Clerk shall serve...

Brink, Ian Michael

03/23/2016  Interoffice

Commonwealth of Pennsylvania

03/23/2016  Interoffice

| | | | |
|---|---|---|---|
| 1 | 05/04/2016 | | Commonwealth of Pennsylvania |

Cmmw's Proposed Voir Dire Questions

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF FRANKLIN COUNTY

## DOCKET



**Docket Number: CP-28-CR-0002047-2015**

## CRIMINAL DOCKET

**Court Case**

Commonwealth of Pennsylvania

v.

Esau Lashow Scott

Page 8 of 15

### ENTRIES

| Sequence Number | CP Filed Date | Document Date | Filed By |
|---|---|---|---|
| Service To | | Service By | |
| Issue Date | Service Type | Status Date | Service Status |
| 2 | 05/04/2016 | 05/02/2016 | Van Horn, Carol L. |

Order/Jury Trial on 5/23/16

May 2, 2016, the above captioned matter having come before the Court for Pre-Trial Conference with the Defendant present, represented by Attorney Brink and the commonwealth represented by Attorney Mangieri,

IT IS HEREBY ORDERED AS FOLLOWS:

1. Trial by jury shall occur on May 23, 2016 after rejection of the final offer by the Commonwealth for a plea of guilty to count 2, in return for a sentence of 24 to 48 months.
2. Jury selection shall occur on May 9, 2016 and proposed voir dire questions are due to chambers of the undersigned no later than May 4, 2016. At the time of selection, each party shall be entitled to eight strikes.
3. The parties hav indicated that there are no outstanding issues for resolution, so no motions in limine will be accepted.
4. Each party shall submit a proposed verdict slip and jury instructions to chambers of the undersigned no later than May 16, 2016. The Commonwealth shall prepared and deliver the full test of proposed instructions for each of the charged offenses.
5. The Commonwealth has indicated the following evidence to be presented at trial through testimony or otherwise:

Taray Wilkerson, Officer Patrick Hinds of the Chambersburg Police Department and a female bartender at Jack and Darrah's bar, along with video surveillance taken inside the bar and photographs taken of the alleged victim. Counsel shall make arrangements through Court Administration in advance of trial regarding technology needs.

Clerk to serve ...

| Brink, Ian Michael | | | |
|---|---|---|---|
| 05/04/2016 | Interoffice | | |
| Commonwealth of Pennsylvania | | | |
| 05/04/2016 | Interoffice | | |

| 1 | 05/16/2016 | | Commonwealth of Pennsylvania |
|---|---|---|---|
| Cmmw's Proposed Points for Charge | | | |

| 2 | 05/16/2016 | | Brink, Ian Michael |
|---|---|---|---|
| Defendant's Proposed Verdict Slip | | | |

| 3 | 05/16/2016 | | Brink, Ian Michael |
|---|---|---|---|
| Defendant's Proposed Jury Instructions | | | |

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF FRANKLIN COUNTY

## DOCKET



**Docket Number: CP-28-CR-0002047-2015**

## CRIMINAL DOCKET

**Court Case**

Commonwealth of Pennsylvania

v.

Esau Lashow Scott

Page 9 of 15

### ENTRIES

| Sequence Number | CP Filed Date | Document Date | Filed By |
|---|---|---|---|
| 1 | 05/23/2016 | | Commonwealth of Pennsylvania |

Cmmw's Exhibits #1 through 7

Cmmw's Exhibits #1 CD of Bar Fight
2-7 Photos of Victim's Injuries

| | | | |
|---|---|---|---|
| 4 | 05/23/2016 | 05/23/2016 | Van Horn, Carol L. |

Ct. 2 Not Guilty, Ct. 3 & 4 Guilty

AND NOW, TO WIT: MAY 23, 2016, we, the jurors empanelled in the above case, find the Defendant, Esau Lashow Scott,   Count 2: Aggravated Assault    NOT GUILTY,   Count 3: Simple Assault    GUILTY, Count 4: Disorderly Conduct GUILTY.

| | | | |
|---|---|---|---|
| 5 | 05/23/2016 | 05/23/2016 | Van Horn, Carol L. |

Order Granting Motion to Revoke Bail/Sentencing Wednesday, June 29, 2016 @ 9:00 a.m.

May 23, 2016, the above-captioned matter having come before a jury this date with convictions on two counts,

IT IS HEREBY ORDERED that sentencing in this matter shall occur on Wednesday, June 29, 2016, at 9:00 a.m. in courtroom 1 of the Franklin County courthouse.

The Franklin County Probation Department is directed to prepare a pre-sentence investigation report in advance of said sentencing.

On motion of the Commonwealth with objection from the Defendant, it is hereby ordered bail is revoked in this matter given the convictions and the possible sentence to be faced by the Defendant.

| | | | |
|---|---|---|---|
| 1 | 06/22/2016 | | Commonwealth of Pennsylvania |

Cmwlth's Sentencing Memorandum

| | | | |
|---|---|---|---|
| 1 | 06/29/2016 | | Mains, Brian Walter |

Def's Pre-Sentence Memorandum

| | | | |
|---|---|---|---|
| 2 | 06/29/2016 | 06/29/2016 | Van Horn, Carol L. |

Order - Sentence/Penalty Imposed

Ct. 3 State Correctional Institution for a period of no less than 12 months or more than 24 months; Defendant is INELIGIBLE for RRRI sentence. Sentence shall commence on this date; Credit is given for time serve: 11/06/15 to 06/29/16; programs deemed necessary; Anger Management; NO CONSUME/Random Tests; $150 Fine; Court Costs; Restitution in the amount of $10,906.13 to CVC Board restitution; Act 35 Supervision Fee; Central Booking Fee.

Ct. 4 State Correctional Institution for a period of no less than 6 months or more than 12 months; Sentence shall run at the expiration of sentence imposed in Criminal Action No. 2047-2015 Ct. 3; Programs deemed necessary; NO Consume/Random Tests; Anger Management; $100 Fine; Court Costs; Act 35 Supervision Fee.

Brink, Ian Michael

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF FRANKLIN COUNTY

## DOCKET



**Docket Number: CP-28-CR-0002047-2015**

# CRIMINAL DOCKET

**Court Case**

Commonwealth of Pennsylvania

v.

Esau Lashow Scott

Page 10 of 15

## ENTRIES

| Sequence Number | CP Filed Date | Document Date | Filed By |
|---|---|---|---|
| Service To | | Service By | |
| Issue Date | Service Type | Status Date | Service Status |
| 06/29/2016 | Hand Delivered | | |

Franklin County District Attorney's Office

| 06/29/2016 | Hand Delivered | | |
|---|---|---|---|

Scott, Esau Lashow

| 06/29/2016 | Hand Delivered | | |
|---|---|---|---|

| 3 | 06/29/2016 | | Court of Common Pleas - Franklin County |
|---|---|---|---|

Penalty Assessed

| 1 | 07/06/2016 | | Rock, Todd A. |
|---|---|---|---|

Entry of Civil Judgment

| 1 | 07/11/2016 | | Scott, Esau Lashow |
|---|---|---|---|

Case Correspondence-6 Pro Se Petitions RE: Appeal

Brink, Ian Michael

| 07/11/2016 | Interoffice | | |
|---|---|---|---|

Commonwealth of Pennsylvania

| 07/11/2016 | Interoffice | | |
|---|---|---|---|

| 1 | 07/22/2016 | 07/21/2016 | Van Horn, Carol L. |
|---|---|---|---|

No Action Taken Order for Processing

AND NOW, this 21st day of July, 2016, the Court having received from the above-captioned Defendant a document that does not bear the signature of counsel and the Court noting that Defendant is represented by Ian M. Brink, Esquire. In light of the prohibition on hybrid representation as set forth in Commonwealth v. Ellis, 626 A.2d 1137, 1139 (Pa.1993);

IT IS HEREBY ORDERED THAT the letter shall be forwarded to the Franklin County Clerk of Courts with no action taken. The Clerk of Courts shall process the letter in accordance with Pa.R.Crim.P. 576(A)(4). Counsel for Defendant shall review Defendant's pro se filing and thereafter take whatever action deemed necessary.

Brink, Ian Michael

| 07/22/2016 | Interoffice | | |
|---|---|---|---|

Commonwealth of Pennsylvania

| 07/22/2016 | Interoffice | | |
|---|---|---|---|

Scott, Esau Lashow

| 07/22/2016 | First Class | | |
|---|---|---|---|

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF FRANKLIN COUNTY

## DOCKET



**Docket Number: CP-28-CR-0002047-2015**

# CRIMINAL DOCKET

**Court Case**

Commonwealth of Pennsylvania

v.

Esau Lashow Scott

Page 11 of 15

## ENTRIES

| Sequence Number | CP Filed Date | Document Date | Filed By |
|---|---|---|---|
| 1 | 07/28/2016 | | Brink, Ian Michael |
| Motion for Leave to Proceed In Forma Pauperis | | | |
| 2 | 07/28/2016 | 07/28/2016 | Rock, Todd A. |
| Order Granting Motion to Proceed In Forma Pauperis | | | |
| 3 | 07/28/2016 | | Brink, Ian Michael |
| Notice of Appeal | | | |
| 4 | 07/28/2016 | | Brink, Ian Michael |
| Motion for Transcripts | | | |
| 1 | 08/01/2016 | 08/01/2016 | Van Horn, Carol L. |
| Concise Statement Order | | | |

AND NOW THIS 1st day of August 2016, it appearing to the Court that the Defendant, has filed on the Court a Notice of Appeal in the above-captioned case to the Superior Court of Pennsylvania from Order of Court dated June 29, 2016, and that this Court being uncertain as to the basis of the appeal,

IT IS HEREBY ORDERED that the Defendant is directed to file of record and with the Court within TWENTY ONE (21) DAYS a concise statement of the matters complained of on appeal. The Statement shall be served on the Court pursuant to Pa.R.A.P. 1925(b)(1). Any issue not properly included in the Statment timely filed and served shall be deemed waived. (Pa.R.A.P. 1925(b)(3)(iv).

The Defendant is also directed to serve upon the Court Reporter a statement of the portions of the record that must be transcribed pursuant to Pa.R.A.P. 1911(a). Sevice on the Court Reporter shall be accomplished by serving the District Court Administrator.

Pursuant to Pa.R.Crim.P. 144, the Clerk shall serve...

Brink, Ian Michael
| 08/01/2016 | Interoffice |

Commonwealth of Pennsylvania
| 08/01/2016 | Interoffice |

| 1 | 08/03/2016 | | Rock, Todd A. |
| Guideline Sentence Form 3 & 4 | | | |
| 1 | 08/22/2016 | | Brink, Ian Michael |
| Concise Statement of the Matters Complained on Appeal | | | |

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF FRANKLIN COUNTY

## DOCKET



**Docket Number: CP-28-CR-0002047-2015**

# CRIMINAL DOCKET

**Court Case**

Commonwealth of Pennsylvania

v.

Esau Lashow Scott

Page 12 of 15

## ENTRIES

| Sequence Number | CP Filed Date | Document Date | Filed By |
|---|---|---|---|
| 1 | 08/25/2016 | | Van Horn, Carol L. |

Transcript of Proceedings Filed

 Lodged 08-25-2016
 Filed 08-30-2016
 Transcript of Proceedings Filed
 Date: June 29, 2016
 The Honorable Judge Carol L. Van Horn

| 1 | 10/11/2016 | 05/23/2016 | Court of Common Pleas - Franklin County |
|---|---|---|---|

Transcript of Proceedings

 TRANSCRIPT OF PROCEEDINGS

 BEFORE: Honorable Carol Van Horn and a jury
 DATE: Monday, May 23, 2016; 9:18 a.m.
 PLACE: Courtroom No. 1
   Franklin County Courthouse
   Chambersburg, PA 17201

 LODGED OCT 11 2016
 FILED OCT 16 2016

| 1 | 10/21/2016 | 10/20/2016 | Van Horn, Carol L. |
|---|---|---|---|

Opinion/Order of Court

 AND NOW THIS 20TH DAY OF October, 2016, pursuant to Pa. R.A.P. 1931(c),

 IT IS HEREBY ORDERED THAT the Clerk of Courts of Franklin County shall promptly transmit to the Prothonotary of the Supreme Court the record in this matter along with the attached Opinion sur Pa. R.A.P. 1925(a).

 The Clerk shall serve...

Brink, Ian Michael
 10/21/2016   Interoffice
Commonwealth of Pennsylvania
 10/21/2016   Interoffice

| 2 | 10/21/2016 | | Rock, Todd A. |
|---|---|---|---|

Appeal Docket Sheet Prepared

Printed: 05/24/2018

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

## COURT OF COMMON PLEAS OF FRANKLIN COUNTY

### DOCKET



**Docket Number: CP-28-CR-0002047-2015**

# CRIMINAL DOCKET

**Court Case**

Commonwealth of Pennsylvania

v.

Esau Lashow Scott

Page 13 of 15

### ENTRIES

| Sequence Number | CP Filed Date | Document Date | Filed By |
|---|---|---|---|
| 1 | 06/28/2017 | 05/16/2017 | Superior Court of Pennsylvania - Middle District |

Affirmed - Superior Court

IN THE SUPERIOR COURT OF PENNSYLVANIA, NO. 2047 MDA 2015, Appeal from the Judgement of Sentence Entered June 29, 2016 in the Court of Common Pleas...Judgement of sentence affirmed. Petition to withdraw granted.

President Judge Gantman joins this memoradum

President Judge Emeirtus Stevens concurs in the result.

Judgement Entered

Joseph D. Seletyn, Esq.
Prothonotary

Date: May 16, 2017

### PAYMENT PLAN SUMMARY

| Payment Plan No | Payment Plan Freq. | Next Due Date | Active | Overdue Amt |
|---|---|---|---|---|
| Responsible Participant | | | Suspended | Next Due Amt |
| 28-2016-P000003806 | Monthly | 01/25/2006 | Yes | $11,528.81 |
| Scott, Esau Lashow | | | No | $6.18 |

| Payment Plan History: | Receipt Date | | Payor Name | Participant Role | Amount |
|---|---|---|---|---|---|
| | 01/24/2017 | Payment | Department of Corrections/IG | Payor | $60.00 |
| | 01/24/2017 | Payment | Department of Corrections/IG | Payor | $10.43 |
| | 02/28/2017 | Payment | Department of Corrections/IG | Payor | $12.66 |
| | 03/24/2017 | Payment | Department of Corrections/IG | Payor | $36.78 |
| | 04/25/2017 | Payment | Department of Corrections/IG | Payor | $6.08 |
| | 05/23/2017 | Payment | Department of Corrections/IG | Payor | $12.16 |
| | 06/26/2017 | Payment | Department of Corrections/IG | Payor | $8.16 |
| | 07/25/2017 | Payment | Department of Corrections/IG | Payor | $11.88 |
| | 08/29/2017 | Payment | Department of Corrections/IG | Payor | $8.58 |
| | 09/25/2017 | Payment | Department of Corrections/IG | Payor | $2.59 |
| | 10/24/2017 | Payment | Department of Corrections/IG | Payor | $8.31 |
| | 11/27/2017 | Payment | Department of Corrections/IG | Payor | $12.88 |
| | 12/22/2017 | Payment | Department of Corrections/IG | Payor | $3.31 |

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF FRANKLIN COUNTY

## DOCKET

**Docket Number: CP-28-CR-0002047-2015**

# CRIMINAL DOCKET

**Court Case**



Commonwealth of Pennsylvania

Page 14 of 15

v.

Esau Lashow Scott

## CASE FINANCIAL INFORMATION

Last Payment Date:   12/22/2017                    Total of Last Payment:   -$3.31

| Scott, Esau Lashow<br>Defendant | Assessment | Payments | Adjustments | Non Monetary<br>Payments | Total |
|---|---|---|---|---|---|
| **Costs/Fees** | | | | | |
| Copies (Franklin) | $15.00 | -$15.00 | $0.00 | $0.00 | $0.00 |
| Jury Sworn (Franklin) | $25.00 | $0.00 | $0.00 | $0.00 | $25.00 |
| Booking Center Fee (Franklin) | $150.00 | $0.00 | $0.00 | $0.00 | $150.00 |
| CJES | $2.25 | $0.00 | $0.00 | $0.00 | $2.25 |
| Certification Case Fee (Franklin) | $5.00 | $0.00 | $0.00 | $0.00 | $5.00 |
| Clerk Automation Cost (Franklin) | $5.00 | $0.00 | $0.00 | $0.00 | $5.00 |
| Commonwealth Cost - HB627 (Act 167 of 1992) | $10.15 | $0.00 | $0.00 | $0.00 | $10.15 |
| Costs of Prosecution - CJEA | $50.00 | $0.00 | $0.00 | $0.00 | $50.00 |
| County Court Cost (Act 204 of 1976) | $33.00 | $0.00 | $0.00 | $0.00 | $33.00 |
| Crime Victims Compensation (Act 96 of 1984) | $35.00 | -$35.00 | $0.00 | $0.00 | $0.00 |
| Domestic Violence Compensation (Act 44 of 1988) | $10.00 | $0.00 | $0.00 | $0.00 | $10.00 |
| Firearm Education and Training Fund | $5.00 | $0.00 | $0.00 | $0.00 | $5.00 |
| JCPS | $21.25 | $0.00 | $0.00 | $0.00 | $21.25 |
| Judicial Computer Project | $8.00 | $0.00 | $0.00 | $0.00 | $8.00 |
| State Court Costs (Act 204 of 1976) | $11.85 | $0.00 | $0.00 | $0.00 | $11.85 |
| Victim Witness Service (Act 111 of 1998) | $25.00 | -$25.00 | $0.00 | $0.00 | $0.00 |
| County Costs (Franklin) | $142.50 | $0.00 | $0.00 | $0.00 | $142.50 |
| Prothonotary Judgment (Franklin) | $27.50 | $0.00 | $0.00 | $0.00 | $27.50 |
| Costs/Fees Totals: | $581.50 | -$75.00 | $0.00 | $0.00 | $506.50 |
| | | | | | |
| **Fines** | | | | | |
| Crimes Code, etc. | $100.00 | $0.00 | $0.00 | $0.00 | $100.00 |
| Crimes Code, etc. | $150.00 | $0.00 | $0.00 | $0.00 | $150.00 |
| Fines Totals: | $250.00 | $0.00 | $0.00 | $0.00 | $250.00 |
| | | | | | |
| **Restitution** | | | | | |
| CVC Board Restitution | $10,906.13 | -$133.82 | $0.00 | $0.00 | $10,772.31 |
| Restitution Totals: | $10,906.13 | -$133.82 | $0.00 | $0.00 | $10,772.31 |
| | | | | | |
| Grand Totals: | $11,737.63 | -$208.82 | $0.00 | $0.00 | $11,528.81 |

CPCMS 9082                                                                                               Printed:  05/24/2018

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports.  Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police.  Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF FRANKLIN COUNTY

## DOCKET



**Docket Number: CP-28-CR-0002047-2015**
# CRIMINAL DOCKET
**Court Case**

Commonwealth of Pennsylvania

v.

Esau Lashow Scott

Page 15 of 15

** - Indicates assessment is subrogated

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports.  Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police.  Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.